390 So.2d 277 (1980)
HANBERRY CORPORATION
v.
STATE BUILDING COMMISSION and Aetna Casualty & Surety Company.
No. 52036.
Supreme Court of Mississippi.
September 10, 1980.
Rehearing Denied December 10, 1980.
George E. Gillespie, Jr., Zachary, Gillespie & Rogers, Hattiesburg, for appellant.
Bill Allain, Atty. Gen. by Donald Clark, Sp. Asst. Atty. Gen., Jackson, Lawrence C. Gunn, Jr., Aultman & Aultman, Hattiesburg, for appellees.
Before ROBERTSON, WALKER and BOWLING, JJ.
*278 BOWLING, Justice, for the Court:
This cause originated in the Circuit Court of Forrest County and involves questions of whether or not demurrers were properly sustained by the lower court.
Appellant, Hanberry Corporation (successor to A.K. McInnis, Jr., Inc.) filed its declaration against Mississippi State Building Commission and Aetna Casualty & Surety Company. The suit grew out of the construction of the Student Union Building on the campus of the University of Southern Mississippi at Hattiesburg. The State Building Commission entered into three separate "co-prime" contracts to perform the work. These contracts were with plaintiff, Hanberry Corporation, for the general building construction, Mechanical Contractors, Inc., for the mechanical installations and construction, and an electrical contracting company that is not a party to this litigation. The separate contracts with each of the contractors contained essentially the same terms, except, of course, for specifications.
Hanberry contends in its declaration that Mississippi Mechanical Contractors, Inc., failed to carry out its contractual obligations and that due to that failure and the manner in which Mechanical performed its work, the entire construction job was delayed; that plaintiff was delayed in doing its work beyond the normal construction time period, and that due to the actions of Mechanical, Hanberry sustained considerable loss in completing its contract with the Commission. The declaration further charged that Mechanical breached its contractual duty to coordinate its operations with that of plaintiff; that the contracts with all three "co-prime" contractors required each to cooperate with the other, and required a mutual responsibility among them and gave each a cause of action if these contractual provisions were not carried out, and a "co-prime" contractor was injured thereby.
Mississippi Mechanical Contractors, Inc., defaulted in the performance of its contract with the Commission. The Mechanical contract was completed by another construction company, secured and paid by appellee, Aetna Casualty & Surety Company. This company had entered into a performance-payment bond as surety for Mississippi Mechanical Contractors, Inc., principal, as required by Mississippi Code Annotated section 31-5-1 (1972).
The charge in the declaration against the Building Commission was that as "owner" it was required by statute to coordinate the work of the three prime contracts and supervise the project, and further that it had an implied contractual duty to see that the three prime contractors cooperated and coordinated their work with each other. The declaration alleged that the Building Commission had failed to carry out these duties.
Hanberry charged that appellee, Aetna Casualty & Surety Company, under the terms of its bond with Mechanical Contractors, Inc., was liable to plaintiff as a third party beneficiary under the bond for plaintiff's alleged damages resulting from the failure of Mechanical to properly perform its contract with the Building Commission. It was charged that the provisions of the bond protected the "co-prime" contractors under the terms of the contracts with the Building Commission as those terms related to the bond provisions.
Aetna filed its demurrer to the original declaration. Its answer and other defenses were filed and its pleading included a counterclaim against plaintiff Hanberry. The counterclaim alleged that if it should be held that Hanberry had a claim against Aetna, then Aetna had a counterclaim against Hanberry. The counterclaim alleged that after the new mechanical contractor was employed by Aetna and entered into completion of the work, Hanberry had been guilty of wrongful acts that delayed that completion. Aetna requested in its counterclaim a judgment against Hanberry for the amount it paid for completion of the work in excess of the original contract amount.
We first consider the original declaration as to Aetna and whether or not the lower court was correct in sustaining Aetna's demurrer. We hold that this was error.
*279 The contract between the Building Commission and Mississippi Mechanical Contractors, Inc., as well as the other two contractors, included the following provision:
If, through acts of neglect on the part of the contractor, any other contractor or any subcontractor shall suffer loss or damage on the work, the contractor agrees to settle with such other contractor or subcontractor by agreement or arbitration if such other contractor or subcontractor will so settle. If such other contractor or subcontractor shall assert any claim against the owner on account of any damage alleged to have been sustained, the owner shall notify the contractor, who shall indemnify and save harmless the owner against any such claim.
The contractor shall coordinate his operations with those of other contractors. Co-operation will be required in the arrangement for the storage of materials, and in the detailed execution of the work. The contractor, including his subcontractors, shall keep informed of the progress and the detailed work of other contractors and shall notify the architect-engineer immediately of lack of progress or defective workmanship on the part of other contractors. Failure of a contractor to keep informed of the work progressing on the site and failure to give notice of lack of progress or defective workmanship by others shall be construed as acceptance by him of the status of the work as being satisfactory for proper coordination with his own work.
A provision of the performance bond between Aetna and Mechanical provided as follows:

If the principal (Miss. Mechanical) shall well, truly and faithfully perform its duties, all the undertakings, covenants, terms, conditions, and agreements of said contract [with the State Building Commission] ... and shall promptly make payment to all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work provided for in such contract... then this obligation shall be void; otherwise, to remain in full force and effect. (Emphasis supplied).
It is recognized that the provisions of most construction contracts and performance bonds are different under various situations. It is, therefore, required that we interpret the particular contracts in question to determine whether or not this particular bond written by Aetna for Mechanical covers Hanberry's alleged claim. In Burns v. Washington Savings, 251 Miss. 789, 171 So.2d 322 (1965), this Court had the following to say:
In order for the third person beneficiary to have a cause of action, the contracts between the original parties must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. This obligation must have a legal duty which connects the beneficiary with the contract. In other words, the right [of action] of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself. 17A C.J.S., Contracts § 519(4) (1963).
In Burns, the Court further stated:
(1) When the terms of the contract are expressly broad enough to include the third party either by name as [sic] one of a specified class, and (2) the said third party was evidently within the intent of the term so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract. Cf. 17 Am.Jur.2d, Contracts § 308 (1964). Accord, Engle Acoustic & Tile, Inc. v. Grenfell, 223 So.2d 613 (Miss. 1969).
The United States Court of Appeals for the Fifth Circuit had a similar question before it in the case of M.T. Reed Construction *280 Co. v. Virginia Metal Products Corp., 213 F.2d 337 (5th Cir.1954). There the Federal appellate court said the following:
These contractors agreed in their respective contracts to coordinate their work and cooperate with each other so as to facilitate and expedite the completion of the building ... [W]e agree with the appellant [the general contractor] that it was a direct beneficiary of the contract of appellee [a "co-prime" contractor] with the state building commission, which obligated the appellee to cooperate with appellant and coordinate its work with that of appellant so as to enable both of them to complete their respective jobs on time. The building could not have been completed without such mutual obligation on the part of each of the contractors, and the obligation so to do was a part of the consideration that induced each of the contractors to undertake its particular job at the agreed price... .
Finally, there was a clause with reference to the mutual responsibility of contractors which provided that, should any contractor cause damage to any separate contractor on the work, the contractor causing such damage agreed, upon due notice, to settle with such other contractor by agreement or arbitration.
According to Funk and Wagnall's New International Dictionary, one meaning of "to settle" is to liquidate or pay, and that is the meaning in which it was used in this instance. One who contracts to pay or liquidate an obligation by agreement or arbitration is liable in an action for damages if he breaches the contract . . Accordingly the contract between the State and the appellee created the latter's direct obligation to settle with, that is to pay, the appellant; out of the facts of this obligation and the fact of its breach, the claim, liability, or cause of action, and suit arose against the appellee in favor of appellant by virtue of the common law of Mississippi.
We think, under the local law, that the contract in suit made the several contractors direct beneficiaries of the contractual provision that any contractor would be liable for any actual damages inflicted upon another contractor on this job because of the breach of any duty assumed under the contract by the contractor.
The contractual obligations of a surety as pertains to so-called third parties was discussed by this Court in Western Casualty & Surety Co. v. Stribling Bros. Machinery Co. 244 Miss. 12, 139 So.2d 838 (1964), wherein the Court said:
The material inquiry in surety contracts in connection with construction enterprise is whether there is a purpose to benefit someone in addition to the one for whom the construction is being done. Where there is no promise on the part of the surety to pay the liabilities of the contractor, and where the surety has not excluded a liability to pay them, the surety contract can be interpreted in terms of right, or lack of right. A.L.I., Restatement of the Law of Security, Section 166. Where the surety only guarantees the contractor's promise to complete a construction project free and clear of all liens and claims, there is no right in third parties because there is no indicated purpose to benefit them. The promise that the contractor will furnish an item does not of itself amount to a promise to pay for the item. The rule is illustrated by contrasting two of our cases: In Linde Air Products Co. v. American Surety Company, [168 Miss. 877, 152 So. 292] supra, the condition of the bond was `that if the said contractor shall pay all persons, firms and corporations who . . furnish equipment ... for use in the work under the contract.' The Court held that the surety was liable for the purchase of new tools and machinery necessary to enable the contractor to do the work under the contract. In that case the obligation of the surety was clearly one for the benefit of third persons furnishing equipment in addition to the obligation in favor of the one for whom the construction was being done. On the other hand, in the [Hartford Accident & *281 Indemnity Co. v.] Hewes case, 190 Miss. 225, 199 So. 93, the surety on the subcontractor's bond guaranteed the faithful performance of the subcontract which required the subcontractor to carry public and employer's liability insurance; and the Court held that the surety was not liable for the premium on such insurance.
In Metropolitan Casualty Insurance Company v. Koelling, 57 So.2d 562 (Miss. 1952), in setting out guidelines for the interpretation of surety agreements, the Court said:
The liability of a surety company is, of course, governed by the express terms and extent of its undertaking. If its service is gratuitous, it is favored by the law. National Union Fire Ins. Co. v. Currie, 180 Miss. 711, 178 So. 104. Such favoritism however does not extend to the compensated surety. While its liability may not be extended beyond the terms of the contract, if the contract is susceptible of two constructions, one of which will uphold and the other defeat the claim, in that event the construction favorable to the insured will be adopted. 50 Am.Jur., Suretyship par. 319, page 1114.
Now looking at the two contracts in question, that is, the contract between the Building Commission and each of the prime contractors, and the performance bond contract executed by Aetna, the interpretation of those obligations as charged in the original declaration of Hanberry appear to be clear. As heretofore pointed out, Aetna's contract with Mechanical was a guarantee by Aetna that Mechanical "would truly and faithfully perform its duties and all the undertakings, covenants, conditions and agreements of said contract" between the Building Commission and Mechanical. The terms of the contract between the Building Commission and the contractor are clear as to the duties and agreements of Mechanical. The latter agreed that it would coordinate its operations with those of Hanberry, who charged in its declaration that it was damaged because Mechanical failed in its duties under its contract. Aetna issued its performance-payment bond knowing that Mechanical had the obligation to Hanberry. The allegations of the declaration come squarely within the duties expressly assumed by Mechanical. It therefore follows that the declaration stated a cause of action by Hanberry against Aetna and the demurrer should have been overruled.
We next consider the action of the lower court in sustaining plaintiff Hanberry's demurrer to Aetna's counterclaim. This counterclaim charged that after Mechanical defaulted in the work and was not able to proceed with its contractual duties, it was necessary for Aetna to assume completion of Mechanical's contract. To do this it entered into an agreement with another mechanical contracting firm. It was alleged in the counterclaim that Hanberry breached its duties and obligations to the substituted prime contractor by not performing its work in a proper manner, thereby causing the new mechanical contractor delays in the completion of the mechanical work. It was further charged that Hanberry failed to coordinate with the other contractors and charged that by its actions, Hanberry knew, or should have known, that it was causing Aetna to pay sums over and beyond the contract price of the original contract between the Building Commission and Mechanical. It was charged that Aetna paid costs for the completion of the job that were excessive and that these costs were due to the failure of Hanberry to abide by its prime contractual agreement.
We have heretofore held that each of the three "co-prime" contractors having similar contracts with the Building Commission were under a contractual duty to coordinate each operation with those of the other contractors. Undoubtedly it was the duty of Aetna to complete the mechanical contract and it was attempting to fulfill this duty. We are forced to the conclusion that if the original declaration stated a cause of action against Aetna, who stepped into the shoes of Mechanical, then under the same principles the allegations of Aetna's counterclaim came within the purview of the duty required of Hanberry. Aetna stated a cause of action in its counterclaim as a third party *282 beneficiary under the prime contracts as hereinbefore discussed. Therefore, we hold that the demurrer of Hanberry to Aetna's counterclaim should have been overruled by the lower court.
The final point to consider is the sustaining by the lower court of the demurrer to Hanberry's cause of action alleged against the State Building Commission. The allegations of the declaration were based in part on Mississippi Code Annotated section 31-11-3 (1972), which provides in part:
The [State Building] Commission . . shall have full power and authority to employ and compensate such architects or other employees necessary for the purpose of making inspections, preparing plans and specifications, supervising the erection of any buildings, and making any repairs or additions as may be determined by the Commission to be necessary. Said commission shall have entire control and supervision of, and determine what, if any, buildings, additions, repairs or improvements are to be made under the provisions of this chapter... .
The declaration further charged that there was an implied in law duty on the part of the Building Commission to coordinate the work between the three prime contracts and that it breached its duty by failing to properly supervise the construction of the building in that regard.
As to the alleged statutory cause of action, it is seen by a reading of the statute that it merely authorizes the Commission to employ independent architects and supervisory persons to make inspections during erection of any state buildings. The contracts made a part of the pleadings in the case show that the Commission did in fact employ independent architects and engineers to look after the progress of the work. These independent agencies were not made parties to the suit. In our opinion, the statute on which Hanberry relies does not require that the Building Commission coordinate or supervise but merely authorizes it to employ independent contractors for that purpose under the contracts in this particular case. We do not intend to hold that the statute does not authorize the Commission to employ persons directly under its organization to perform supervisory duties. We only hold that the contracts included as a part of the declaration in this cause do not show that this was done.
In regard to the allegation of the declaration that the Building Commission had an "implied" contractual duty to coordinate the work of the three prime contractors and to see that the work of each was performed properly, we refer to the contract entered into with each contractor by the Commission. It plainly says that "all prime contractors and all subcontractors shall coordinate all work, one with the other, so as to facilitate the general progress of the work." We find that this provision and all provisions of the contract taken together clearly show that the Building Commission correctly relied on the three prime contractors to coordinate between themselves. As hereinbefore stated, independent contractors, architects and engineers, were regularly inspecting the progress of the work, but, as shown by the contracts, they were acting as independent agents and are not parties to this cause. There had to be some reason for the Building Commission to handle this rather large construction job in the manner in which it was handled. Even though the entering into separate prime contracts might be questioned in the construction industry, this was the way it was done, and in so doing, the Building Commission relieved itself of responsibility. Therefore, we hold that the lower court was correct in sustaining the demurrer of the Building Commission to the declaration.
We affirm the sustaining of the demurrer of the State Building Commission but reverse the order of the trial court sustaining the demurrer of Aetna to Hanberry's declaration, and the sustaining of Hanberry's demurrer to Aetna's counterclaim. This cause is remanded for a trial on the merits as to Hanberry and Aetna.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
*283 SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.
PATTERSON, C.J., took no part.