# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01675-SCT

*EVAN JOHNSON & SONS CONSTRUCTION, INC.*

*v.*

*THE STATE OF MISSISSIPPI AND TOMPKINS, BARRON & FIELDS ARCHITECTS, A PARTNERSHIP*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2001 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD M. DYE |
| | PHIL B. ABERNETHY |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: T. HUNT COLE, JR. |
| | EDWARD OMER PEARSON |
| | PETER LARKIN DORAN |
| | T. CALVIN WELLS |
| | BARRY CLAYTON CAMPBELL |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/04/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The State of Mississippi Military Department (State) and Tompkins, Barron & Fields Architects (Tompkins) were granted summary judgment dismissing with prejudice all claims asserted against them by Evan Johnson & Sons Construction, Inc. (Johnson) under a construction contract. The State was also thereafter granted summary judgment as to its counterclaim for liquidated damages against Johnson and its surety in the amount of $119,150.34, and a final judgment consistent with the opinion and order was

likewise entered the same day for this amount with post-judgment interest at the rate of 8% per annum. Johnson appeals the ruling of the circuit court citing numerous errors. Finding that the motions for summary judgment dismissing Johnson's claims were properly granted in favor of the State and Tompkins and that the State's motion for summary judgment as to its counterclaim for liquidated damages against Johnson was likewise properly granted, this Court affirms the final judgment entered consistent with these opinions by the Circuit Court of the First Judicial District of Hinds County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On May 16, 1995, Johnson was awarded a contract to build the STARC Armory facility which was owned by the State through the Mississippi National Guard. Tompkins was selected as the architect. Independent Roofing, Inc. (Independent Roofing) was Johnson's roofing subcontractor. A portion of the project required Johnson to construct a curved barrel vault roof. Prior to the bids being submitted, prospective bidders raised several questions concerning how this roof was to be constructed. In response to these questions, Tompkins prepared Addendum No. 1 which consisted of seven drawings clarifying the design of the curved portion of the barrel vault roof.

¶3.     Johnson completed all portions of the project except the construction of the curved portion of the roof, which was to be performed by Independent Roofing. As construction of the curved portion of the roof was begun, Independent Roofing informed Johnson that the construction as specified in the plans and in Addendum No. 1 would not achieve the results sought by the State. Johnson notified the State of Independent Roofing's discovery; however, the State and Tompkins instructed Independent Roofing to install the roof as specified in the design. Notwithstanding this clear directive from the State and Tompkins to construct the roof in compliance with the original plans and Addendum No. 1, Johnson attempted to

2

place the roof over a structure of corrugated "S" deck which did not incorporate the use of bent or rolled "Z" purlins. As Independent Roofing was constructing the last layer of the roof, the State rejected the project stating it did not produce the appearance the State desired.

¶4. After work was ceased, two cure notices were sent to Johnson directing the company to proceed with the project. After an eleven-month impasse, Johnson finally presented this dispute for hearing before a Contract Dispute Review committee on April 30, 1997. The committee found that Johnson had deviated from the design and specifications without written authorization. The review committee also recommended that Johnson replace the existing roof with one constructed in accordance with the design and specifications. On May 6, 1997, after a review of the committee's recommendations the Adjutant General directed Johnson to complete the roof.

¶5. As of the scheduled completion date of May 8, 1997, the roof had not been completed by Johnson, and the contract was then terminated by the State. The contract was later rebid, and the roof was eventually completed on October 6, 1998, by Mandal's of Gulfport. However, it was not built according to the original design and specifications due to the fact that in order to save time, the State and Tompkins modified the design substituting bent pipe for the "Z" purlins.

¶6. On November 21, 1997, Johnson filed a complaint against the State and Tompkins in the Circuit Court of the First Judicial District of Hinds County. This five-count complaint charged (1) breach of contract by the State due to the State's alleged failure to submit plans and specifications which would produce the desired result; (2) breach of implied warranty by the State; (3) negligence by Tompkins; (4) wrongful termination and breach of contract by the State; and, (5) breach of contract by the State due to the State's alleged failure to make timely payments under the contract. The State filed a counterclaim

3

against Johnson for liquidated damages and costs paid to complete the project. On December 15, 1999, Tompkins, joined by the State, filed a motion for summary judgment to dismiss Johnson's action with prejudice. A hearing was held on May 15, 2000, and the circuit judge took the motion under advisement for subsequent ruling. On September 18, 2000, the circuit judge entered his 14-page Memorandum Opinion and Order on Motions for Summary Judgment in which he found, inter alia, that Johnson had no good justification for non-performance, and thus, summary judgment was granted against Johnson and in favor of the State and Tompkins. In this same opinion and order, the circuit judge dismissed with prejudice all claims asserted by Johnson against the State and Tompkins, and also kept viable the State's counterclaim for liquidated damages against Johnson.

¶7.    On May 14, 2001, the State filed a motion for summary judgment on its counterclaim for liquidated damages. After a hearing held on July 16, 2001, the trial court took the motion under advisement and on August 27, 2001, entered its 7-page Opinion and Order on State's Claim for Liquidated Damages. In its opinion and order, the trial court granted the State's motion for summary judgment and found that a judgment for the State and against Johnson and its surety in the amount of $119,150.34 should be entered. On the same day, the trial court entered its final judgment consistent with the opinion.

¶8.    On September 13, 2001, Johnson attempted to supplement the record with numerous affidavits and deposition transcripts.[1] What amounted to Johnson's second attempt to supplement the record (see

---

[1] Of significant import is the fact that likewise, four days prior to the summary judgment hearing of July 16, 2001, Johnson filed a notice of filing with attached affidavits and depositions (consuming 191 pages of the record) in an effort to defeat the State's motion for summary judgment. In a separate order entered on August 27, 2001, the same day as the entry of the opinion and final judgment, the circuit judge granted the State's motion to strike this evidentiary material, finding in its order that the materials consisted "either of matters previously submitted and already considered by the Court and rejected, or of new affidavits that

4

footnote 1) was met by a joint motion from the State and Tompkins. That motion was filed with this Court, and on July 30, 2002, a single justice order was entered on behalf of the Court thereby striking from the record some 1,160 pages (pages 906 - 2065). Johnson timely appealed and raises the following issues before this Court:

1. Whether the trial court erred in granting defendant's motion for partial summary judgment as to whether defendants wrongfully terminated the construction contract and whether Evan Johnson was entitled to a time extension, delay damages and extra work costs.

2. Whether the trial court erred in granting defendant's subsequent motion for summary judgment as to whether the state was entitled to recover from Evan Johnson liquidated damages and the costs to complete the contract.

3. Whether the trial court erred in finding as a matter of law that Evan Johnson was in material breach of its contract so as to justify defendant's termination of the contract for default.

4. Whether the trial court erred in finding as a matter of law that the plans and specifications issued by defendants were not defective and that the state did not breach its implied warranty that the plans, when followed, would produce the desired result.

5. Whether the trial court erred in finding no disputed issue of material fact on the above issues, and in rejecting and ignoring the affidavit of Evan Johnson's architectural expert witness, Lynton B. Cooper.

6. Whether the trial court erred in finding that there was no disputed issue of material fact as to the reasonableness of the completion costs incurred by the state after termination of Evan Johnson's contract, even if the default termination had been proper.

7. Whether the trial court erred in finding that there was no disputed issue of material fact as to the state's entitlement to assess liquidated damages against Evan Johnson, even if the default termination had been proper.

---

could have been submitted on the same issue of fault prior to the May 15, 2000, hearing on summary judgment, but were not." The trial court based its action in striking this evidentiary material on Miss. R. Civ. P. 56(c)-(d) and our decisions in *Jones v. James Reeves Contractors, Inc.*, 701 So.2d 774, 786 (Miss. 1997); and, *Richardson v. APAC-Miss., Inc.*, 631 So.2d 143, 146 (Miss. 1994). The trial court likewise acknowledged in its separate opinion and order that it had by separate order struck this evidentiary material and not considered these documents in rendering its decision. By this Court's order entered on July 30, 2002, the appellees' motion to strike these pages (688-878) from the appellate record was passed for consideration with the merits of this appeal and by order entered on February 27, 2004, this Court granted the motion to strike.

8. Whether the trial court erred in finding summary judgment was appropriate as to both defendants, or either of them.

¶9.    In addition to these issues, Tompkins submit the following issues for consideration which were also adopted by the State:

9. Whether summary judgment is appropriately granted against a contractor who claims impossibility of performance where the record reflects objective evidence that another contractor has successfully complied with the challenged design and/or specification, and completed the challenged construction.

10. Whether a government contractor may defeat summary judgment based on unavailability of materials when objective evidence produced in the court below establishes the availability of those materials.

11. Whether a government contractor may defeat summary judgment in a case alleging negligent design without showing that the challenged plans were, in fact, attempted and followed.

12. Whether the trial court properly granted summary judgment where the objective evidence showed Evan Johnson & Sons could not produce evidence in support of essential elements of the their case on negligent design and/or wrongful termination.

¶10.    For sake of clarity, the issues identified by Johnson, Tompkins, and the State have been consolidated into two issues for purposes of this opinion.

## DISCUSSION

¶11.    This Court employs a de novo standard in reviewing a trial court's grant of summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 65 (Miss. 1988). Summary judgment may only be granted where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R.C.P. 56(c). The trial court must carefully review all evidentiary matters in the light most favorable to the non-moving party. *Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 362 (Miss. 1983). If in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be granted. *Id.*

6

**I.     WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S AND TOMPKINS, BARRON & FIELDS'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO WHETHER THE STATE WRONGFULLY TERMINATED THE CONSTRUCTION CONTRACT.**

*A. Genuine Issue of Material Fact*

¶12.    Johnson argues there were clear issues of fact created by discovery produced by Johnson which were ignored and rejected by the trial court. Johnson argues because the trial court tried issues of fact on a Rule 56 motion, the grant of summary judgment should be reversed and remanded for a trial on the merits.

¶13.    The crux of Johnson's argument lies with the affidavit of Lynton B. Cooper. Johnson contends this affidavit is all that is necessary to create a genuine issue of material fact as to the claims of negligence against Tompkins and as to the claims of breach of warranty and contract against the State. Johnson claims Cooper's affidavit specifically outlines the inadequacies of the design and the reasons the design fails to comply with the standard of care which should be exercised by a reasonably prudent architect.

¶14.    Johnson also argues that there are numerous other documents and testimony, aside from the affidavit of Cooper, which create a genuine issue of material fact. Johnson claims Tompkins had difficulty interpreting its own design sixteen months after Johnson had begun building the armory referenced by correspondence between Tompkins and Berridge Manufacturing Company. Johnson argues the roof installed by the replacement contractor was not built according to the original plans and specifications. Johnson also argues the full scale model was inadequate because the model only attempted to recreate the first two sections, not all eight sections.

¶15.    The State argues the trial court correctly applied Rule 56 standards in granting summary judgment in favor of the State and Tompkins regarding Johnson's alleged wrongful termination. The State contends Johnson did not demonstrate any genuine issue of material fact. The State argues Johnson offered only conclusory assertions which the trial court correctly rejected.

¶16.    In reviewing Cooper's affidavit, the trial court determined it to be "conclusory in nature, and without substantial support for the conclusions being drawn." The trial court found that the plans were followed by the replacement contractors and the contractors who built the full scale model of a portion of the roof. The trial court further found that there were no genuine issues of material fact remaining for trial and, therefore, granted summary judgment in favor of the State and Tompkins.

¶17.    This Court has continuously held:

> Summary judgments should be granted with great caution. *Smith v. Sanders*, 485 So.2d 1051, 1054 (Miss. 1986); *Brown*, 444 So.2d at 363. The Comment to Rule 56 provides that "the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." *Brown*, 444 So.2d at 362. When there is doubt as to whether a genuine issue of material fact exists, the non-moving party should be given the benefit of that doubt, and the motion should be denied. *Id.*

> In spite of this requirement of caution in granting summary judgment, this Court has held that the non-moving party must be diligent in opposing the motion for summary judgment. *Smith v. H.C. Bailey Companies*, 477 So.2d 224, 233 (Miss. 1985); *Bourn v. Tomlinson Interest, Inc.*, 456 So.2d 747, 749 (Miss. 1984). Moreover, in order for summary judgment to be inappropriate, there must be genuine issues of *material* fact; the existence of a hundred contested issues of fact will not thwart summary judgment where none of them is material. *Shaw v. Burchfield*, 481 So.2d 247, 252 (Miss. 1985). A fact issue is material if it tends to resolve any of the issues properly raised by the parties. *Pearl River County Bd. of Sup'rs v. South East Collections Agency, Inc.*, 459 So.2d 783 (Miss. 1984).

8

. . . In ***Galloway et al. v. The Travelers Insurance Co. et al***, 515 So. 2d 678 (Miss. 1987), this Court quoted with approval the following language from the ***Celotex Corp. v. Catrett***, 477 U.S. 317, 106 S.Ct. 2548 (1986), decision:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

***Galloway***, at 683.

***Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.***, 519 So.2d 413, 415-16 (Miss. 1988).

¶18.    We agree with the trial court that the Cooper affidavit was conclusory and did not present a material issue of genuine fact. In his Memorandum Opinion and Order, the circuit judge stated:

> In particular, Cooper states in conclusory fashion that the plans and specifications were defective, unclear and/or ambiguous. The Court has reviewed the proof regarding the plans and specifications in the original form and in the re-bid form, and finds that there can be no legitimate dispute that the plans and specifications could be followed, and were followed in connection with the actual roof construction completed by Mandal's Inc. and construction of the full scale model of the roof portion which has been demonstrated to the Court through photographs.

¶19.    The circuit judge was presented with numerous documents by all parties to this action, and he determined there was no competent or probative proof submitted by Johnson to rebut the evidence presented by the State and Tompkins. Johnson's argument that the trial court improperly tried issues of fact on a Rule 56 motion is without merit.

*B. Negligence and Defective Design*

9

¶20.    Although the trial court, Tompkins and the State relied heavily on Johnson's failure to prove impossibility of performance, Johnson argues that this claim is not one for impossibility of performance, but for negligence and defective design. Instead Johnson contends the plans and specifications for the curved portion of the barrel vaulted roof were defective and ambiguous; therefore, it argues that the termination of Johnson's contract for failure to complete the roof was wrongful and a breach of contract. Johnson claims the issue of defective and ambiguous plans and specifications is a genuine issue of material fact which should be submitted to a jury.

¶21.    Tompkins argues Johnson repeatedly claimed it was impossible to construct the roof using the Tompkins design. However, neither Johnson, nor its subcontractor, ever made any attempt to construct the roof according to the plans and specifications. This led to Johnson's dismissal from the contract.

¶22.    Tompkins argues that in order for Johnson to recover from Tompkins based on defective plans and specifications, Johnson must establish that it attempted to build the structure in compliance with the plans and specifications provided and that the impossibility of construction and compliance with plans and specifications provided was impossible not only to Johnson, but to any other who would attempt to build the structure in accordance with the plans and specifications. Tompkins argues Johnson failed to meet all of these essential elements; therefore, the grant of summary judgment as to wrongful termination was proper.

¶23.    The State adopts the argument of Tompkins regarding defective design. The State also argues the replacement contractor was successfully able to accomplish the architect's design with a bent pipe substituted in place of the "Z" purlins. The State claims Johnson missed the scheduled completion date after never attempting to construct the roof as designed. The State also argues rolled "Z" purlins were

10

commercially available from a metals fabricator in California even though Johnson claimed such an item did not exist. The State also contends John Liggett of American Metal Works in Brandon was able to successfully construct a full scale model of Tompkins's design of the roof using the rolled "Z" purlins as called for in the design.

¶24. As a finding of fact, the trial court determined that, although Johnson claimed it was impossible to construct the compound curved portion of the roof, the plans and specifications were not impossible with which to comply. The trial court stated the full scale model of a portion of the roof used rolled "Z" purlins which Johnson claimed did not exist.

¶25. Under basic substantive law regarding contracts, several factors have been considered in evaluating a claim of commercial impossibility. Two of those factors are: (1) whether any other contractor was able to comply with the specifications, *see Foster Wheeler Corp. v. United States*, 206 Ct. Cl. 533, 546-47, 513 F.2d 588, 595 (1975), and (2) the extent of the contractor's efforts in meeting the specifications, *see Oak Adec, Inc. v. United States*, 24 Cl. Ct. 502, 504 (1991); *Whittaker, Power Servs. Div.*, 79-1 B.C.A. (CCH) ¶ 13,805 (A.S.B.C.A.1979). The contractor must prove that the industry as a whole found the specifications impossible. *Id. See also Jennie-O Foods, Inc. v. United States*, 217 Ct.Cl. 314, 580 F.2d 400, 410 (1978); *Foster Wheeler*, 513 F.2d at 595.

> [C]ase law does support a requirement that the contractor demonstrate that the specifications were, from an objective point, incapable of performance. *Natus Corp. v. United States*, 178 Ct.Cl. 1, 10, 371 F.2d 450, 456 (1967); *ESB, Inc.*, 81-1 B.C.A. (CCH) ¶ 15,012 (A.S.B.C.A.1981). However, it is plain that this analysis evolved as an *addition to an underlying demonstration of subjective impossibility (the contractor itself cannot do the work). The contractor must also show that no one else could perform.* See *Restatement (Second) of Contracts § 261 cmt. e (1981). Hence, the courts use an objective standard to prevent an*

11

*incompetent or negligent contractor from recovering by simply alleging that it (subjectively) could not perform the work. As stated by the board in **ASC Sys. Corp.**, 78-1 B.C.A. (CCH) ¶ 13,119 (A.S.B.C.A.1978): "[p]erformance impossibility must be established on an objective basis, not subjectively. That is, the contractor may not rely solely upon his own inability to accomplish the specified task; he must also negate the possibility of performance by others...." **ASC Sys.**, 78-1 B.C.A. at 64, 134. The objective standard is thus not intended to be a "sword" for plaintiffs alleging impossibility, but rather a "shield" to be used by defendants to deflect such charges by a contractor whose own inability was the cause of non-performance. The standard does not operate as Oak Adec contends to insulate the contractor from inquiry into its management of the contracts.*

Any question that a contractor must demonstrate its own effort to perform was answered by the Court of Claims in **Jennie-O Foods**. There, the court stated:

> The [commercial impracticability] doctrine may be utilized only when the promisor has exhausted all its alternatives, when in fact it is determined that all means of performance are commercially senseless. There can be little sympathy for contractors who seek refuge behind the label of commercial senselessness (impracticability) without proof that they have made an effort to obtain performance in an alternative fashion.

**Jennie-O Foods**, 217 Ct. Cl. at 328, 580 F.2d at 409 (citation omitted). It is thus clear that the subjective experience of the contractor is a factor that must be considered when determining whether a contract is commercially impossible.

**Oak Adec**, 24 Cl. Ct. at 505-06 (emphasis in original).

¶26. Johnson failed in his burden of proving impossibility not only on a subjective basis, but also on an objective basis. The roof was successfully rebid and built substituting pipe for the rolled "Z" purlins. Also, a full scale model of a portion of the roof was constructed using rolled "Z" purlins as called for in the original plans and specifications. Although Johnson claimed materials were not available to meet the specifications because a rolled "Z" purlin did not exist, the trial court was presented with evidence of compound curved "Z" purlins which were obtained by American Metals of Brandon and successfully used in the full scale

12

model of a portion of the roof. Because Johnson failed to prove any other contractor was unable to comply with the original design and specifications and because Johnson failed to attempt to construct the roof according to the original design and specifications, this Court finds Johnson's claim for defective design must fail.

¶27. Although Johnson claims it is not arguing impossibility but is suing for negligent design and wrongful termination, we agree with the trial court, Tompkins and the State that impossibility of performance is the true claim. Johnson stated materials were unavailable and the plans and specifications were defective; therefore, it was impossible to construct the roof as depicted in Addendum No. 1. However, Johnson made no effort to construct the structure as shown in the plans but instead attempted to place a roof over the structure that did not incorporate "Z" purlins, and therefore, did not achieve a satisfactory result. It was also determined that a metal supplier in California could supply bent or rolled "Z" purlins. The roof was successfully rebid and completed with modifications due to time constraints. A full scale model of a portion of the roof was also successfully completed using the original plans and Addendum No. 1. This Court finds summary judgment was proper because Johnson was unable to meet all the elements of its claim of defective design.

## II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S SUBSEQUENT MOTION FOR SUMMARY JUDGMENT AS TO WHETHER THE STATE WAS ENTITLED TO RECOVER FROM EVAN JOHNSON LIQUIDATED DAMAGES AND THE COSTS TO COMPLETE THE CONTRACT.

¶28. Johnson claims the grant of summary judgment in favor of the State regarding the counterclaim for liquidated damages was improper. Johnson argues because the State's termination of the contract was

wrongful, this claim must also fail. Johnson also claims there are fact issues as to the reasonable cost to complete the contract which would also make summary judgment inappropriate.

¶29.    The State argues the award of liquidated damages is specifically authorized by the express terms of the contract. Paragraph 5 of the government construction contract between the parties explicitly and expressly provides for the termination and award of contractual liquidated damages against the contractor for such delay-default:

> 5.    <u>TERMINATION FOR DEFAULT-DAMAGES OR DELAY-TIME EXTENSIONS-</u>
>
> a.    If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within such time, the State may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the State may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the State for...liquidated damages for delay, as fixed in the specifications or accompanying papers, until such reasonable time as may be required for the final completion of the work....

Paragraph 108 of the contract between the parties expressly sets the contractual rate of liquidated damages for delay.  It provides:

> 108.  <u>LIQUIDATED DAMAGES</u>-In case of failure on the part of the contractor to complete the work within the time fixed in the contract or any extensions thereof, the contractor shall pay to the State as liquidated damages, pursuant to the Clause of this contract entitled <u>TERMINATION FOR DEFAULT-DAMAGES OR DELAY-TIME EXTENSIONS</u>, the sum of $ 231.81 for each day of delay.

(emphasis in original).

¶30.    The trial court found that the completion date for Johnson was May 8, 1997, and the replacement contractor successfully completed the roof on October 6, 1998. At the contractually specified rate of $231.81 per day, the 514 days of delay equals $119,150.34 in liquidated damages.

¶31.    Johnson cites only one case as authority for its argument that the trial court incorrectly granted summary judgment as to the amount of damages, *Miss. Transp. Comm'n v. SCI, Inc.*, 717 So. 2d 332 (Miss. 1998).  However, *SCI* is completely distinguishable from this case.  *SCI* did not involve a specific contractual provision setting out liquidated damages for each day of delay as did the State's contract with Johnson.  *SCI* also did not involve uncontroverted facts as to the scheduled completion date and the actual day of completion.

¶32.    Johnson never contested the method of calculation of liquidated damages.  Through the documents submitted in response to the State's motion for summary judgment, Johnson only sought to relitigate the trial court's previous order dismissing its complaint against the State and Tompkins for negligence and defective design.

¶33.    The contract is clear as to the per-day amount of liquidated damages.  Johnson provided no genuine issue of material fact to rebut the State's evidence.  Therefore, we find that the trial court's grant of summary judgment in favor of the State as to liquidated damages was proper.

**CONCLUSION**

¶34.    The trial court did not err in granting summary judgment in favor of the State and Tompkins as to Johnson's claims of negligence and defective design.  The trial court also did not err in granting summary judgment in favor of the State as to its claim of liquidated damages against Johnson.  Johnson was unable to demonstrate any genuine issue of material fact and was also unable to meet all the elements of its claim

15

of defective design. Therefore, we affirm the trial court's grant of summary judgment in favor of State and Tompkins and its final judgment entered consistent therewith, which also included an award of damages against Johnson and in favor of the State in the amount of $119,150.34 plus post-judgment at the rate of 8% per annum until paid.

¶35.    **AFFIRMED.**

   **PITTMAN, C.J., SMITH, P.J., EASLEY AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.    COBB, J., DISSENTS WITHOUT SEPARATE    WRITTEN    OPINION.        WALLER,    P.J.,    AND    DIAZ,    J.,    NOT PARTICIPATING.**