955 So.2d 979 (2007)
EVERMAN'S ELECTRIC CO., INC., Appellant
v.
EVAN JOHNSON & SONS CONSTRUCTION, INC. and W.G. Yates Construction Company, Inc., Appellees.
No. 2005-CA-01544-COA.
Court of Appeals of Mississippi.
May 8, 2007.
*980 Thomas W. Prewitt, attorney for appellant.
W. Edward Hatten, Jr., Haley N. Broom, Gulfport, Donald C. Dornan, Jr., attorneys for appellees.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Everman's Electric Company, Inc. ("Everman") brought this action against Evan Johnson & Sons Construction, Inc., ("Johnson") and W.G. Yates Construction Company, Inc. ("Yates") for damages arising out of work performed at a construction project, on which all three were co-prime contractors. The Harrison County Circuit Court granted summary judgment in favor of Johnson and Yates. Everman appeals and argues the trial court erred in using the contract language to bar recovery. We reverse and remand the summary judgment entered in favor of Johnson and affirm the summary judgment entered in favor of Yates.

FACTS
¶ 2. In 2001, the Biloxi Public School District ("BPSD") began construction of a new Biloxi High School. Rather than hire a general contractor, which would be responsible for hiring subcontractors, BPSD directly contracted with each contractor. On February 1, 2000, BSPD had contracted with Yates to serve as the Construction Manager. Yates was responsible, among other things, for managing, scheduling, and supervising all the contractors. Also, according to its contract, Yates was to act as BPSD's agent and representative with the other contractors. BPSD contracted with Johnson to serve as the general works contractor. Johnson likewise was responsible for coordinating its work with the other contractors. On February 7, 2001, BPSD contracted with Everman to serve as the project's electrical contractor. The separate contracts of Everman, Yates, and Johnson each incorporated by reference the General Conditions, the Project Manual, and written modifications executed after the date of the agreement.
¶ 3. During the project, scheduling confusion caused Everman delays and the need to rework wiring and stubs which it had already set up in the building. Specifically, Everman took issue with the block mason contractor who ran over its wiring, poured floors, and erected walls and ceilings before Everman was scheduled to perform the wiring. At the end of the project, Everman accepted final payment, *981 which included deductions for "fire proofing performed by others," "door and frame damage," and "damages to installed ceiling tiles."
¶ 4. Everman and its president Tyrone Everman, individually, brought this action against Johnson and Yates. Everman alleged that Johnson and Yates negligently performed their duties under their respective contracts with BPSD. As a result, Everman claimed that it did not realize as much profit as it otherwise would have received. Mr. Everman also claimed individual damages for emotional distress.[1]
¶ 5. The trial court granted the motions for summary judgment filed by Johnson and Yates on the ground that Everman waived its claims. Everman appeals the grants of summary judgment.

STANDARD OF REVIEW
¶ 6. This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Id. at 1177(¶ 9). If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his or her favor. Id. Issues of fact sufficient to require reversal of a summary judgment obviously are present where one party swears to one version of the matter in issue, and another says the opposite. Id.

ANALYSIS
I. Whether Mississippi extends liability to third parties damaged by the negligence of professionals performing the duties Johnson and Yates performed.
¶ 7. Everman argues that Mississippi has long recognized the rule that engineers/architects are liable to a contractor or third party not in privity when damaged by the negligent performance of a contractual duty owed to the owner. Everman cites us to State v. Malvaney, 221 Miss. 190, 210, 72 So.2d 424, 431 (1954), where the supreme court held that an architect's obligation to supervise the performance of the contract created a duty which extended to a third party (the surety) in the absence of privity of contract, stating, "[t]he architect, therefore, undertook the performance of an act which, it was apparent, if negligently done would result in loss to the surety, and the law imposed upon him the duty to exercise due care to avoid such loss. . . ." Hence, Everman claims that this principle makes an architect or engineer liable to a third party for negligently failing to supervise, schedule and coordinate construction, and it applies to Johnson and Yates because they assumed similar duties.
¶ 8. Johnson and Yates counter by arguing that Everman's claims are for negligence and not of contract. Johnson and Yates claim that Everman cannot point to any legal duty which it could contend was breached by either Johnson or Yates.
¶ 9. Everman's complaint asserted two claims  delay damages and liquidated damages. First, on the claim for delay *982 damages, Count I claimed both Johnson and Yates:
negligently interfered with, hindered, delayed and made Everman's work more expensive; negligently prevented Everman and Mr. Everman from organizing and running Everman's crews so that its work could be performed efficiently. . . . Their negligence made Everman's operations much more costly and Mr. Everman was unable to schedule Everman's manpower so that it performed effectively and efficiently; instead . . . Everman's operations [were] made much more expensive th[a]n it should have been since Everman was required to move its labor force from location to location. . . . [,] expensive delays and other reductions in efficiency experienced by Everman at the Project and caused the conditions in which Everman was required to work to be different and more expensive than they would and should have been. . . .
¶ 10. Second, on the claim for liquidated damages, Count II asserted that Yates negligently caused liquidated damages to be assessed against Everman. According to the contract, time was of the essence. If Everman caused a delay in construction, the liquidated damages clause applied, and Everman was liable to BPSD for liquidated damages in the amount of $1,000 a day. If Everman's work was delayed through no fault of its own, then the delay clause applied, and Everman was entitled to additional time. Everman asserts that Yates knew or should have known that the delays were not Everman's fault.
¶ 11. The trial court held that Everman waived these claims by virtue of the "no damages for delay" clause in its contract and by accepting final payment.
A. No damage for delay clause
¶ 12. The General Conditions, incorporated into Everman's contract, provided:
If [Everman] is delayed, hindered, or impede[d] at any time in the progress of the Work for any reason or by any alleged act or neglect of . . . [Yates] . . . or by separate Contractor [Johnson] . . . then the Contract Time may be extended by Change Order for such reasonable time as is agreed to by [BPSD]. However, to the fullest extent permitted by law, and notwithstanding any other provisions in the Contract Documents, [BPSD] . . . and [Yates] and their agents and employees shall not be liable for any damages for delay whether for direct or indirect costs, extended home office overhead, idle or inefficient labor or equipment, cost escalations, or monetary claims of any nature arising from or attributable to delay by any cause whatsoever. [Everman's] sole and exclusive right and remedy for delay by any cause whatsoever is an extension [of] the Contract Time but no increase in the Contract Sum.
(emphasis added). The plain language of this contractual provision clause prohibits the imposition of liability against Yates for delay damages. Indeed, the contract itself provides for the sole and exclusive remedy for any damages from such delays was in the form of an extension of the contract time but no increase in the contract sum. These are the very damages alleged in Count I. Additionally, we find that the liquidated damages in Count II are also delay damages because, they are "monetary claims of any nature arising from or attributable to delay by any cause whatsoever." Therefore, Yates was certainly entitled to summary judgment based on the contract documents in place.
*983 ¶ 13. Unlike Yates, Johnson cannot find solace under this clause. It does not expressly waive delay damages against Johnson. It only waives damages against BPSD, the architect, Yates, and their agents and employees. The only way this clause would extend to Johnson would be if it were an agent or employee of BPSD or Yates.
¶ 14. For the first time on appeal, Johnson claims to be BPSD's agent. This is a question of fact. Engle Acoustic & Tile, Inc. v. Grenfell, 223 So.2d 613, 617-18 (Miss.1969). "The burden of proving an agency relationship rests upon the party asserting it, in this case [Johnson]." First United Bank v. Reid, 612 So.2d 1131, 1137 (Miss.1992) (quoting Highlands Ins. Co. v. McLaughlin, 387 So.2d 118, 120 (Miss.1980)). Johnson points to no evidence in the record that it was BPSD's agent. Having the affirmative of the matter, Johnson was required to produce the evidence. Evan Johnson & Sons Constr., Inc. v. State, 877 So.2d 360, 365(¶ 17) (Miss.2004).
¶ 15. On the contrary, we find the record contradicts Johnson's belated claim. According to the employment contracts, all contractors were independent contractors of BPSD and not agents or employees. Furthermore, the General Conditions provided that in case a contractor such as Johnson caused damage to another contractor such as Everman, the defending contractor would indemnify and hold BPSD harmless, and resolve the dispute itself with the complaining contractor. This is further evidence that Johnson was not an agent of BPSD. The fact that Johnson was an independent contractor is undisputed by the evidence. Indeed in its brief on page sixteen, Johnson recognizes that the contractors were independent contractors.
¶ 16. Nevertheless, Johnson states that Everman's appellate brief concedes that Johnson is an agent. Indeed, in page 9 of Everman's brief, Everman stated, "to the extent that Johnson damaged Everman by negligently failing to coordinate the activities of the contractors, it was likewise the agent for a disclosed principal. . . ." Everman, in making an argument that Yates was still liable even though an agent for a disclosed principal, for whatever reason decided to rope Johnson in on this argument as well. Regardless, on these facts, summary judgment cannot stand. At the most, all this concession does is create a genuine issue of material fact as to whether Johnson was an agent or not. At the least, the concession does not outweigh the undisputed record evidence that Johnson was not an agent for BPSD.
B. Final payment
¶ 17. According to the General Conditions, acceptance of final payment shall act as a waiver of claims by BPSD and by Everman, except those previously noticed and identified as unsettled. In other words, when BPSD made final payment, it promised to waive any unnoticed claims. In exchange, when Everman accepted final payment, it promised to waived any unnoticed claims. The waivers flowed between BPSD and Everman. Nothing in the final payment clauses indicates that Johnson was to benefit from these waivers.
¶ 18. What the contract does say is, "Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law." If anything the contract preserves Everman's claim against Johnson.
*984 ¶ 19. When accepting final payment, Everman executed a statutory affidavit. The affidavit provided, "acceptance of such payment is acknowledged as a release of the Owner [BPSD] from any and all claims under or by virtue of the Contract except those listed below." (emphasis added). Nothing in the affidavit operated to release Yates or Johnson. Thus Everman's acceptance of final payment did not release its claims against Yates and Johnson.
¶ 20. Despite the plain language of the contract and the statutory affidavit, the trial court and Johnson relied on Mississippi Highway Commission v. Patterson Enterprises, Ltd., 627 So.2d 261 (Miss. 1993), for the proposition that final payment releases all claims against all parties. We disagree. Patterson was a subcontractor on a construction project for the State Highway Commission. Id. at 261-62. Patterson's contract bound it to the terms of the general contractor's contract, which incorporated Section 109.09 of the Mississippi Standard Specifications for Road and Bridge Construction. Id. at 262-63. By these terms, Patterson agreed that the general contractor's acceptance of final payment from the commission operated to release Patterson's claims against the Commission. Id. at 263.
¶ 21. Here, Everman agreed that its own acceptance of final payment would act as a release of claims against the owner. Neither Patterson nor Everman agreed to release the other contractors.
¶ 22. We reverse and remand the trial court's summary judgment that held that Everman waived its claim against Johnson.
II. Whether there is a genuine issue of fact that Johnson owed Everman a duty as a direct third party beneficiary.
¶ 23. The trial court recognized that Everman pled a third party beneficiary case; however, it held that any such duties were waived. Johnson argues it owed no duties to Everman.
¶ 24. Everman, Johnson, and Yates are co-prime contractors, because each has a direct contract with the building's owner, BPSD. "Because the performance of prime contractors in a multi-prime contract tend to be closely interrelated, a delay or other breach by one prime will often lead to losses by others." Melvin Aron Eisenberg, Third-Party Beneficiaries, 92 Colum. L.Rev. 1358, 1401 (Oct.1992). If Prime Contractor 1 breaches a duty owed to the owner, and Prime Contractor 2 is damaged thereby, Prime Contractor 2 has a claim against 1 as a third party beneficiary. Id. (citing Hanberry Corp. v. State Bldg. Comm'n, 390 So.2d 277, 278-81 (Miss.1980)). The Mississippi Supreme Court has held:
In order for a third person beneficiary to have a cause of action, the contracts must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. This obligation must have a legal duty which connects the beneficiary with the contract. In other words, the right (of action) of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.
Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1146(¶ 38) (Miss.2004). The supreme court has further explained:
(1)When the terms of the contract are expressly broad enough to include the third party either by name as [sic] one of a specified class, and (2) the said third party was evidently within the intent of *985 the term so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.
Burns v. Washington Savs., 251 Miss. 789, 797, 171 So.2d 322, 325 (1965).
¶ 25. The supreme court settled the issue now before us. In Hanberry, the State Building Commission contracted for the construction of the University of Southern Mississippi's Student Union. Hanberry, 390 So.2d at 278. Rather than hire a general contractor, the Commission directly contracted with three separate "co-prime" contractors. Id. It contracted with Hanberry to perform the general construction work and with Mechanical Contractors, Inc., for mechanical installations. Id. Finally, there was a direct contract with an electrical contractor, which was not a party to the suit. Id. The separate contracts contained virtually identical terms. Id. Specifically, each contract contained the following clause:
If, through acts of neglect on the part of the contractor, any other contractor . . . shall suffer loss or damage . . . the contractor agrees to settle with such other contractor. . . . If such other contractor . . . shall assert any claim against the owner on account of any damage . . . the owner shall notify the contractor, who shall indemnify and save harmless the owner against any such claim.
The contractor shall coordinate his operations with those of other contractors. . . . The contractor . . . shall keep informed of the progress . . . and shall notify the architect-engineer immediately of lack of progress . . . on the part of other contractors. . . . Failure of a contractor to keep informed . . . and . . . to give notice . . . shall be construed as acceptance by him of the status of the work as being satisfactory for proper coordination with his own work.
Id. at 279. The Hanberry court approved a holding from the Fifth Circuit, where such a clause made one contractor a direct beneficiary of the contract between the owner and another "co-prime" contractor. Id. at 280 (citing M.T. Reed Constr. Co. v. Va. Metal Prods. Corp., 213 F.2d 337 (5th Cir.1954)). The reason was that the offending contractor had:
obligated [itself to] cooperate with appellant so as to enable both of them to complete their respective jobs on time. The building could not have been completed without such mutual obligation on the part of each of the contractors, and the obligation so to do was a part of the consideration that induced each of the contractors to undertake its particular job at the agreed price. . . .
Finally there was a clause . . . which provided that, should any contractor cause damage to any separate contractor on the work, the contractor causing such damage agreed, upon due notice, to settle with such other contractor. . . .
Accordingly the contract between the State and the appellee created the latter's direct obligation to settle with, that is to pay, the appellant; out of the facts of this obligation and . . . its breach, the claim . . . arose against the appellee in favor of appellant by virtue of the common law of Mississippi.
. . . [T]he contract . . . made the several contractors direct beneficiaries of the contractual provision that any contractor would be liable for any actual damages inflicted upon another contractor on this job because of the breach of any duty assumed under the contract by the contractor.
Id. (quoting M.T. Reed, 213 F.2d at 338-39). Based on this principle, the court held that Hanberry stated a claim as a *986 third party beneficiary to Mechanic's contract with the Commission. Mechanic agreed to coordinate its operations with Hanberry and negligently failed to do so. Id. at 281.
¶ 26. Likewise, Everman, Yates, and Johnson were separate "co-prime" contractors for BPSD. Their contracts all incorporated the same documents. The contracts provided language identical to the Hanberry and M.T. Reed contracts, to-wit:
[T]he Contractor shall coordinate its activities with those of the Owner and of other Contractors so as to facilitate the general progress of all work being performed by all parties. Cooperation will be required in the arrangement for the storage materials and in the detailed execution of the work.
The Contractor, including his subcontractors, shall keep informed of the progress and the detailed work of other Contractors and shall immediately notify the Contractor in writing of lack of progress or delays by other Contractors which are affecting Contractor's work. Failure of Contractor to keep informed of the progress of work of the other Contractors and/or failure of Contractor to give written notice of lack of progress or delays by other contractors shall be deemed to be acceptance by Contractor of the status of progress by other Contractors for the proper coordination and completion of Contractor's work. If, through acts or neglect, on the part of the Contractor, any other Contractor or subcontractor shall suffer loss or damage or assert any claims of whatever nature against the Owner, the Contractor shall defend, indemnify and hold harmless the Owner from such claims or damages, and the Contractor shall resolve such alleged damages or claims directly with the Other Contractors or Subcontractors.
Additionally, the Project Manual provided that Yates:
shall provide administrative, management and related services to coordinate scheduled activities and responsibilities of the Contractors with each other . . . and shall manage the Project in accordance with the latest approved estimate of Construction Cost, the Project Schedule and the Contract Documents. . . . [and] shall schedule and conduct meetings to discuss such matters as procedures, progress and scheduling. . . . [and] shall schedule and coordinate the sequence of construction in accordance with the Contract Documents and latest approved Project construction schedule.
Yates further was bound to "review and certify all Applications for Payment." By express terms, Everman was made a direct third party beneficiary to Yates's and Johnson's contracts with BPSD.
¶ 27. We have previously determined that the contract provisions specifically prohibited Everman's claims against Yates. However, Johnson had a duty to coordinate its work with Everman. Mr. Everman testified that Johnson breached this duty by not working according to posted schedules. He further testified that when he asked Johnson where it planned on working, Johnson referred him to the posted schedule that Johnson was not following. This was enough to create a genuine dispute of material fact as to whether Johnson negligently breached its duty to coordinate with Everman and thus caused Everman delay damages. Johnson was not entitled to summary judgment.

CONCLUSION
¶ 28. We affirm summary judgment granted in favor of Yates. We reverse summary judgment granted to Johnson and remand this case for further proceedings consistent with this opinion.
*987 ¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO APPELLANT, EVERMAN'S ELECTRIC CO., INC., AND TO APPELLEE, EVAN JOHNSON & SONS CONSTRUCTION, INC.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The trial court granted a summary judgment on this issue. Mr. Everman agreed that Johnson and Yates owed him no duty. Mr. Everman's individual claim is not before us in this appeal.