925 So.2d 907 (2006)
Carolyn Ann GRICE, Appellant
v.
FEDEX GROUND PACKAGE SYSTEM, INC., Rick Rutland, Dean Garland and Sedrick Richardson, Appellees.
No. 2005-CA-00029-COA.
Court of Appeals of Mississippi.
April 4, 2006.
*909 Ron L. Woodruff, Jim Waide, Tupelo, attorneys for appellant.
Craig Alan Cowart, James R. Mulroy, attorneys for appellees.
EN BANC.
KING, C.J., for the Court.
¶ 1. Aggrieved by the trial court's grant of summary judgment, Carolyn Ann Grice appeals and asserts the following assignments of error:
1. The circuit court erred in granting summary judgment to appellees on appellant's claim of malicious interference with contract.
2. The circuit court erred in granting summary judgment to appellees on appellant's claim of defamation, although amended complaint did not specifically set forth a cause of action for defamation.
3. The circuit court erred in granting summary judgment to appellees on appellant's claim of intentional infliction of emotional distress.

STATEMENT OF FACTS
¶ 2. Grice was an independent contractor who delivered packages for Federal Express. On February 21, 2001, Grice submitted a thirty day notice that she was going to terminate her contract. During the first week of March 2001, Grice went to Dr. McKinney complaining that she had been suffering from fever and a dry cough. Dr. McKinney advised Grice she had signs of tuberculosis and should not return to work until after she received a chest x-ray and consulted a lung specialist. Grice telephoned her supervisor, Dean Garland, and informed him that she would be unable to come to work for a couple of days because she might have tuberculosis. Garland then informed her that he would have someone cover her route. Subsequently, Grice had an appointment with Dr. Chase, a lung specialist, and the county health department. Although Grice tested positive for tuberculosis at the health department, Dr. Chase informed her that she had asthma and bronchitis, not tuberculosis.
¶ 3. On March 9, 2001, Grice submitted a second resignation letter in which she stated that she was changing the date of her resignation to March 12. Grice's reason for the earlier resignation was a claim that she had not been allowed back in the building after reporting that she may have tuberculosis and that she had received a threatening phone call from another employee advising her not to return to work.
¶ 4. On September 7, 2001, Grice filed a complaint against Federal Express and *910 three of its employees alleging assault, defamation, tortious breach of contract, gross negligence, and intentional infliction of emotional distress. The trial court dismissed Grice's breach of contract claim for submission to arbitration and dismissed with prejudice Grice's assault claim. Grice then filed an amended complaint alleging malicious interference with employment relations against three Federal Express employees, intentional infliction of emotional distress against all defendants, and breach of contract against Federal Express, even though the trial court previously dismissed this claim for submission to arbitration. Federal Express moved for summary judgment, which was granted on December 17, 2004. No written opinion accompanies Judge Funderburk's order granting summary judgment.

ISSUES AND ANALYSIS
¶ 5. The grant or denial of summary judgment is reviewed de novo. Monsanto Co. v. Hall, 912 So.2d 134, 136 (¶ 5) (Miss. 2005). The burden is on the movant to demonstrate that no genuine issue of material fact exists. Id. This Court examines all evidentiary matters before it, and views the evidence in the light most favorable to the party against whom the motion was made. Grammar v. Dollar, 911 So.2d 619, 622 (Miss.Ct.App.2005) (citing McMillan v. Rodriguez, 823 So.2d 1173, 1177(¶ 9) (Miss. 2002)). We will discuss each claim separately to determine whether any of Grice's claims should have survived summary judgment.

1. Intentional interference with contract[1]
¶ 6. The elements of the tort of intentional interference with contract are: (1) intentional and willful acts, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) resulting in actual damage or loss. Par Industries, Inc. v. Target Container Co., 708 So.2d 44, 48(¶ 8) (Miss.1998) (citing Cenac v. Murry, 609 So.2d 1257, 1268-69 (Miss.1992)). "[T]he plaintiff must prove that the contract would have been performed but for the alleged interference." Id. Further, "[this] tort only arises if there is interference with the contract between plaintiff and some third party." Nichols v. Tri-State Brick and Tile Co., Inc., 608 So.2d 324, 328 (Miss.1992).
¶ 7. Even assuming that a genuine issue of material fact existed as to the first two elements of the tort, the same cannot be said of the third element of the tort, as applied to Garland and Rutland. "[O]ne occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." Morrison v. Mississippi Enterprise For Technology, Inc., 798 So.2d 567, 574 (Miss.Ct.App.2001) (quoting Shaw v. Burchfield, 481 So.2d 247, 255 (Miss. 1985)). This privilege is not an exception, rather it "is merely a specific example of having `right or justifiable cause' to interfere with the relationship." Id. At the time of the alleged events in question, Garland, Rutland, and Richardson were managers at Federal Express. As such they occupied positions of responsibility on behalf of Federal Express. The question *911 then becomes whether the managers were acting within the scope of their responsibilities and without bad faith when they allegedly committed acts which interfered with the Grice-Federal Express contract.
¶ 8. Grice claims that Garland and Rutland refused to let her enter the terminal on March 9, 2001, so that she could pick up her paycheck. Grice further contends that since she was not allowed to enter the terminal, there was no way that she could carry out the remainder of her contractual duties. Grice produced affidavits from three former Federal Express contractors who witnessed Garland prevent Grice from entering the building to retrieve her paycheck. However, one affiant stated, "[Garland] locked the doors to the sort area and told us not to let [Grice] in because he was afraid that she would be contagious." Nevertheless, Grice attempts to prove that Garland was acting in bad faith with a claim that Dr. Chase faxed a letter "to FedEx" on March 7, 2001, stating that Grice did not have tuberculosis and was safe to return to work. To support this assertion, Grice submitted an unsworn, hearsay statement from Dr. Chase, dated three years after the fact, which stated, "I did give Mrs. Grice a note that it was ok to return to work." The letter is silent as to any communication with Grice's employer. Grice also submitted an affidavit from a nurse in Dr. Chase's office which stated, "[O]ur office faxed a letter to FedEx, stating that [ ] Grice could return to work and that she did not have TB. However, we do not have a copy of that letter or the confirmation for the fax." The same nurse submitted a second affidavit in which she effectively retracted her earlier statements by admitting that she had no personal knowledge that a fax was sent to Federal Express from Dr. Chase's office. Accordingly, Grice failed to raise a genuine issue of material fact that Garland acted in bad faith. As to Grice's claim that Rutland was involved in locking her out of the building on March 9, 2001, thus interfering with her contract, Grice submits nothing more than a bare assertion that Rutland was involved in the incident. Therefore, summary judgment in favor of Garland and Rutland on the issue of intentional interference with contract was proper.
¶ 9. As to Richardson's alleged interference with Grice's contract, Grice testified that Richardson called her at home to check the status of her health, and when she stated that she planned to return to work, he expressed concern that she could infect him, and ultimately infect his baby at home, and told her that it would not be in her best interest to return to work. Specifically, Grice testified that Richardson threatened her by telling her that if she came to work sick she would "come up missing." During his deposition, Richardson recalled calling Grice at home to inquire about the status of her health. He stated that he did remember expressing concern to Grice that she may infect his baby with tuberculosis if she came to work infected. However, Richardson denied discouraging Grice from returning to work or making any threat to Grice that she would "come up missing" if she returned to work.
¶ 10. "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." Gorman-Rupp Co. v. Hall, 908 So.2d 749, 753-54 (Miss.2005) (citing Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990)). Since Grice claimed that Richardson's threat was one of the reasons she could not return to work and fulfill the remainder of her contract, while Richardson denied making any such threat, a genuine issue of material fact existed. If accepted *912 as true, Grice's testimony would have established that Richardson was acting outside the scope of his employment and with a lack of good faith. Therefore, the trial court erred in granting summary judgment in favor of Richardson on Grice's claim of intentional interference with contract.

2. Defamation
¶ 11. "When analyzing defamation claims, Mississippi courts employ a bifurcated process. First, the Court must determine whether the occasion called for a qualified privilege. If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse." Eckman v. Cooper Tire & Rubber Co., 893 So.2d 1049, 1052(¶ 9) (Miss.2005). Our supreme court has defined qualified privilege as follows,
A communication made in good faith and on a subject-matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous. . .
Young v. Jackson, 572 So.2d 378, 383 (Miss.1990) (quoting Louisiana Oil Corp. v. Renno, 173 Miss. 609, 618-19, 157 So. 705, 708 (1934)). "When qualified privilege is established, statements or written communications are not actionable as slanderous or libelous absent bad faith or malice if the communications are limited to those persons who have a legitimate and direct interest in the subject matter." Id. (quoting Benson v. Hall, 339 So.2d 570, 573 (Miss.1976)).
¶ 12. Grice submitted affidavits to the trial court which stated that Garland and Rutland told their employees and independent contractors that Grice had tuberculosis. These same affidavits reveal that both managers advised their employees and contractors to get tested for tuberculosis. There is no question that Garland and Rutland and their employees and independent contractors had a genuine interest in knowing whether a co-worker with whom they were in frequent contact had a highly contagious disease. Accordingly, Garland and Rutland had a qualified privilege to tell their subordinates that Grice either may have had or had tuberculosis.
¶ 13. Grice seems to argue that the privilege was lost because the managers made the statement with malice and/or in bad faith. Grice claims that Garland and/or Rutland should have known that she did not have tuberculosis because Dr. Chase's office faxed a letter to Federal Express stating that Grice did not have tuberculosis and could return to work. However, as noted above, Grice failed to present any evidence to support this assertion.
¶ 14. We find that Garland and Rutland had a qualified privilege, and their publications regarding Grice's health fell within the permissible scope of the privilege. The trial court was correct in granting summary judgment in favor of the defendants on this issue.

3. Intentional infliction of emotional distress
¶ 15. To prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove that the defendant's acts were so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Croft v. Grand Casino Tunica, Inc., 910 So.2d 66, 75(¶ 31) (Miss.Ct. App.2005) (quoting Brown v. Inter-City Federal Bank, 738 So.2d 262(¶ 9) (Miss.Ct. App.1999)). As we have found that Garland *913 and Rutland acted without bad faith and with the best interest of their employees and contractors in mind, we fail to find that their acts were extreme, outrageous, or beyond all bounds of decency. As to the alleged threat made by Richardson to Grice, our supreme court has held that liability for intentional infliction of emotional distress does not extend to mere threats. Raiola v. Chevron U.S.A., Inc., 872 So.2d 79, 85(¶ 23) (Miss.Ct.App.2004) (citing Brown v. Inter-City Fed. Bank, 738 So.2d 262, 264(¶ 9) (Miss.Ct.App.1999)).

CONCLUSION
¶ 16. We affirm the grant of summary judgment in favor of Garland and Rutland. We reverse the grant of summary judgment as to Richardson on Grice's intentional interference with contract claim and remand that issue to the trial court.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED AS TO APPELLEES FEDEX GROUND PACKAGE SYSTEM, INC., AND GARLAND. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY AS TO ALL CLAIMS AGAINST APPELLEE RICHARDSON OTHER THAN THE CLAIM OF INTENTIONAL INTERFERENCE OF CONTRACT IS AFFIRMED. THE JUDGMENT AS TO THE INTENTIONAL INTERFERENCE OF CONTRACT CLAIM AGAINST APPELLEE RICHARDSON ONLY IS REVERSED AND REMANDED. ALL COSTS OF THE APPEAL ARE ASSESSED EQUALLY BETWEEN APPELLANT AND APPELLEE RICHARDSON.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.
NOTES
[1] Grice refers to this tort throughout her brief and pleadings as malicious interference with employment relations. However, as an independent contractor, the proper designation is intentional interference with contract.