BARNES, J.,
for the Court:
¶ 1. This personal-injury case involves an automobile collision between Diana Ladnier and Diego, a horse owned by Joseph Hester. Diana and her husband, Lawrence Ladnier, appeal the judgment of the Circuit Court of George County, which granted summary judgment in favor of Hester. Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Shortly after midnight on January 2, 2008, Diana was driving her vehicle on River Road near Lucedale, Mississippi, returning home from her job as a correctional officer at a local facility, when three horses ran across the road. She struck the largest horse — Diego—who weighed approximately 1,000 pounds. Diana claims she was not speeding, and the road was unlit and dark. The horses were owned by Hester. Diana alleged that, due to the accident, she sustained serious personal injuries resulting in medical bills well over $69,000 and damage to her vehicle.[1] As a result, the Ladniers filed a personal-injury suit against Hester in the Circuit Court of George County; Diana claimed Hester was negligent for allowing his three horses to roam free on River Road,[2] while Lawrence sued for loss of consortium.
¶ 3. Hester had owned the property where the horses were kept since March 2006. The property contained approximately six acres of land and Hester’s residence. Three acres were fenced pasture for his horses, with approximately half of *1076 this area fenced by barbed wire. The other half was fenced by “field fence,” which was made from four-feet high “horse and cattle box wire” with six-foot steel posts spaced every ten feet. Hester erected this fence when he purchased the property, and since then, the horses have resided there. After the accident, Hester determined that his three horses had escaped by trampling down a portion of the field fence. However, Hester stated that the horses had never broken out of their enclosure during the two-year period from March 2006 until this incident.
¶4. Usually, Hester visually inspected the fence when he fed the horses grain at approximately 6:00 p.m. each evening. He did so the evening of the incident, but he did not observe any problems with the fence that evening. Diana and Lawrence also own horses. Diana admitted she did not know exactly how Hester’s horses got out of the fence, and she did not observe any problems with the fence. Hester mentioned that his neighbor had let the horses graze on his pasture across the road at least one week out of every month in the prior summer before the incident. Lawrence speculated that Hester had inadequately fed his horses and that they escaped to feed on Bahia grass in the neighbor’s pasture, which is where two of the horses were found after the accident.
¶ 5. After the completion of discovery, Hester moved for summary judgment, claiming that the Ladniers could not produce any evidence that he was negligent in securing his horses. The trial court agreed and granted summary judgment. The Ladniers now appeal, raising two issues: there was a genuine issue of material fact about whether Hester was negligent in the confinement of his three horses, and the Ladniers presented ample circumstantial evidence for a jury determination on negligence.
STANDARD OF REVIEW
¶ 6. When examining a grant or denial of a motion for summary judgment, the appellate court applies a de novo standard of review. State ex rel. Hood v. Louisville Tire Ctr., Inc., 55 So.3d 1068, 1072 (¶ 9) (Miss.2011) (citing Evan Johnson & Sons Constr., Inc. v. State, 877 So.2d 360, 364 (¶ 11) (Miss.2004)). Summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Id. (quoting M.R.C.P. 56(c)). The trial court must review the evidence in the light most favorable to the nonmoving party. Id. The movant bears the burden of proving that no genuine issue of material fact exists. Moss v. Batesville Casket Co., 935 So.2d 393, 399 (¶ 16) (Miss.2006) (citing Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990)). “If any triable issues of fact exist, the lower court’s decision to grant summary judgment will be reversed. Otherwise the decision is affirmed.” Moss, 935 So.2d at 399 (¶ 18) (quoting Richmond v. Benchmark Constr. Corp., 692 So.2d 60, 61 (Miss.1997)).
ANALYSIS OF THE ISSUES
I. Negligence Claim
¶ 7. The Ladniers argue that there is a genuine issue of material fact as to whether Hester was negligent in using box wire “field fence” for a portion of the horses’ enclosure, instead of barbed wire. They claim whether the “field fence” was reasonable under the circumstances presents a fact question for a jury to decide.
¶ 8. The Mississippi Supreme Court has specifically commented on a *1077 livestock owner’s liability for stray livestock in Pennyan v. Alexander, 229 Miss. 704, 91 So.2d 728 (1957) and Barrett v. Parker, 757 So.2d 182 (Miss.2000). To support a claim of negligence, the plaintiff must submit proof showing the defendant: “(1) failed to exercise reasonable care to keep the [animal] from being at large, and (2) that such failure, if any, resulted in the escape of the [animal] from its enclosure, and (3) that the [animal] owner’s failure to exercise such reasonable care proximately caused injury to the motorist who collided with the [animal].” Barrett, 757 So.2d at 188 (¶ 16). “Apart from statute or ordinance the owner of a domestic animal is not under an absolute duty to keep it from being loose and unattended on the highway and its being there is not in itself ... unlawful or a wrong to the person injured or ... whose property is damaged.” Penyan, 229 Miss, at 713, 91 So.2d at 732 (quoting 2 Am.Jur. Animals § 738). Thus, the mere fact that livestock escapes from an enclosure and an accident occurs is not, in itself, evidence of negligence on the part of the livestock owner. Barrett, 757 So.2d at 187 (¶ 15). The plaintiff must prove actual negligence. Id. at 187-88 (¶ 15).
¶ 9. Summary judgment “is mandated where the respondent has failed ‘to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.’ ” Smith ex rel. Smith v. Gilmore Mem’l Hosp., Inc., 952 So.2d 177, 180 (¶ 9) (Miss.2007) (quoting Wilboum v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1214 (Miss.1996)). Mississippi Rule of Civil Procedure 56(e) explains the Ladniers’ burden: “When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.”
¶ 10. Hester provided the following evidence that no genuine issue of material fact existed regarding the Ladniers’ negligence claim. Hester described the field fence at issue as “just basic horse and cattle box wire.” Importantly, the horses had not escaped their pasture in the two years prior to the incident, since they had been enclosed there, with the same fence at issue. Hester determined that in this instance, the horses had escaped by smashing down the box-wire field fence to approximately two feet from the ground, but there was no evidence as to why. While Lawrence theorized that Hester’s horses were malnourished, hungry, and enticed by the Bahia grass in the pasture across the road, the evidence showed otherwise. Hester fed his horses daily at 6:00 p.m. with grain and/or hay, and he maintained he had fed the horses approximately six hours before the escape. Hester also visually inspected the fence daily during feeding time, and nothing appeared amiss the night before the accident. Further, while Hester’s neighbor had let Hester’s horses graze on his Bahia grass approximately one week per month, the horses had grazed only during the prior summer, which was six months before the incident.
¶ 11. The Ladniers argue that Hester had a duty to use a proper enclosure to keep his horses from roaming on River Road, and his decision to use field fence for a portion of this enclosure breached that duty of care. They further contend that a reasonable person knew or should have known the horses would compromise the field fence, with the foreseeable consequences and risks that the horses would escape and be struck by a vehicle on the road. Therefore, the Ladniers concluded *1078 that a reasonable person should have known that using a field fence to contain horses was a dangerous hazard for drivers.
¶ 12. However, the Ladniers’ arguments fail because they did not produce any evidence, such as testimony, exhibits, expert opinions, product warnings, or recognized industry standards, to rebut Hester’s evidence that the field fence was adequate for containing horses under the circumstances. The “[nonmoving] party’s claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict.” Lott v. Purvis, 2 So.3d 789, 792 (¶ 11) (Miss.Ct.App.2009) (quoting Wilbourn, 687 So.2d at 1213). Importantly, “bare assertions are simply not enough to avoid summary judgment.” Watson v. Johnson, 848 So.2d 873, 878 (¶ 18) (Miss.Ct.App.2002) (citing Travis v. Stewart, 680 So.2d 214, 218 (Miss.1996)). The Ladniers state there are “countless factors” a jury could take into consideration regarding whether the field-fence section of the enclosure was unreasonable, such as its construction and the size of the animals, but they fail to offer any proof to support these factors. There is also no evidence that Hester’s fencing was in poor condition. Additionally, if, as the Ladniers argue, only barbed-wire fencing is adequate to restrain horses and field wire is inadequate, the Ladniers should have offered recognized industry standards and expert testimony stating such. Instead, the Ladniers only present arguments as the basis of their rebuttal, yet they bear the burden to support their arguments on summary judgment with evidence that they would bear the burden of proving at trial.
¶ 13. The Ladniers also claim that Hester’s horses had a propensity for harm, which furthers their negligence claim. In McMillan v. Rodriguez, 823 So.2d 1173, 1178 (¶ 13) (Miss.2002), the supreme court spoke to this issue: “Generally, ‘[t]he owner or keeper of a domestic animal is charged with knowledge of the natural propensities of animals of the particular class to which this animal belongs, and, if these propensities are of the kind that might cause injury he must exercise the care necessary to prevent such injuries as may be anticipated.’ ” (Quoting 4 Am. Jur. 2d Animals § 102 (1995)). The evidence, however, shows the horses did not have a propensity for harm. Hester stated that none of his horses had “mean” propensities. He did admit that, in general, horses like to lean on fences and roam. However, as the trial court noted, just because horses generally have these propensities would not put a reasonable person on notice that Hester’s horses would trample a field fence and escape, causing injury to a motorist. Further, Hester claimed that Diego, while wanting to be the “boss of the pen,” was not high strung, but had a calm and “kind of curious” demeanor. Diego was also excellent with children, of whom Hester has five. Hester described his other two horses as “laid back.” Finally, neither the Ladniers nor Hester presented any evidence that Hester’s horses had a propensity to smash down fences and escape from their pasture. Nor do the Ladniers provide any evidence to support their contention that hunger caused the horses to escape.
¶ 14. The Ladniers fail to meet their burden of proof showing there is a genuine issue of material fact on the elements of negligence. They produced no evidence that Hester failed to act with reasonable care in enclosing his horses or that the horses had any propensities to escape or cause injuries. Therefore, this issue is without merit.
2. Circumstantial Evidence
¶ 15. Next, the Ladniers argue that negligence may be proven through *1079 circumstantial evidence and that a jury could conclude that Hester acted unreasonably in choosing field fence to enclose his horses. Ladnier cites to K-Mart Corp. v. Hardy, 735 So.2d 975, 981 (¶ 17) (Miss. 1999) for the proposition that “negligence may be established by circumstantial evidence in the absence of testimony by eyewitnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference.” (Citing Downs v. Choo, 656 So.2d 84, 90 (Miss.1995)).
¶ 16. The Ladniers request that this Court infer that Hester’s construction of the fence was faulty and that his choice of field fence was unreasonable. They refer to the fence as “dilapidated” and state “common sense” should guide the case. A photograph of the portion of the fence at issue was entered into evidence, but it does not appear “dilapidated.” Hester admitted the photograph was taken after he had pulled up the trampled portion of the fence. The Ladniers also claim that circumstantial evidence supports the probability that the horses escaped to graze on the Bahia grass across the road.
¶ 17. However, in Barrett, a case factually similar to this one, the supreme court explained: “[I]t would not be impossible for a cow to escape and get onto a nearby road even though its owner was not negligent in any manner in his confinement of the cow. Therefore, allowing the jury to infer negligence ... simply because [the defendant’s] yearling was loose on the road would not be appropriate.” Barrett, 757 So.2d at 187 (¶ 15). While the jury could infer negligence on the defendant’s part from other evidence besides that the animal escaped, such as that the fence was in poor condition, here, we have no such “other” evidence from which to infer negligence. According to the record, the horses were well fed, and the fence was in good condition.
CONCLUSION
¶ 18. For the above-stated reasons, we conclude that the trial court did not err in granting summary judgment in favor of Hester.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND RUSSELL, J. MYERS, J. NOT PARTICIPATING.

. Diego was badly injured as well, but it survived its encounter with Diana's vehicle.

. In the complaint the Ladniers also claimed that Hester violated Mississippi Code Annotated section 69-13-111 (Rev.2005) for allowing his horses to roam on a "major county road.” However, the Ladniers abandoned this claim when they discovered this statute did not apply to River Road as it was not a federal or state designated highway as required by statute.