ON WRIT OF CERTIORARI

CARLSON, Presiding Justice,
for the Court:
¶ 1. Diana Ladnier and Lawrence Ladnier appealed the judgment of the George County Circuit Court, granting summary judgment in favor of the defendant, Joseph Hester. The Court of Appeals, in a six-three opinion (one judge not participating), affirmed. The Court of Appeals denied the motion for rehearing filed by the Lad-niers. The Ladniers then petitioned for a writ of certiorari, which this Court granted.
FACTS AND PROCEDURAL HISTORY
¶ 2. For the most part, our recitation of the relevant facts is taken from the opinion of the Court of Appeals. We will set out additional facts as needed in the course of our discussion.
¶ 3. Shortly after midnight on January 2, 2008, Diana Ladnier was driving her vehicle on River Road near Lucedale, returning home from her job as a correctional officer at a local facility, when three horses ran across the road. She struck the largest horse — Diego—which weighed approximately 1,000 pounds. Diana claims she was not speeding, and the road was unlit and dark. The horses were owned by Joseph Hester. Diana asserted that, because of the accident, she sustained serious personal injuries, resulting in medical bills in excess of $69,000. Diana also claimed damage to her vehicle. Diana and *1027 Lawrence Ladnier filed a personal-injury suit against Hester in the Circuit Court of George County. Diana claimed she was entitled to damages because Hester was negligent for allowing his three horses to roam free on River Road, while Lawrence sued for loss of consortium.
¶ 4. Hester had owned the property where the horses were kept since March 2006. The property contained approximately six and two thirds acres of land and Hester’s residence. Approximately three acres were a fenced enclosure for his horses. Hester stated in his deposition that the acreage on the west side of the property contained a boundary fence, constructed of three strands of barbed wire approximately four feet in height. The north side included a “field fence” approximately four feet high. On the east side, there was an adjoining wooden fence and on the south side was a three-strand barbed wire fence, with the exception of one particular small section, which was fenced with field fence. After installing a gate where barbed wire once was, Hester chose to install “field fence” in the corner, rather than reinstalling barbed wire. One end of the “field fence” was attached to a wooden post with regular fence staples and the other end was attached merely with fasteners on the posts.
¶ 5. The “field fence” portions were made from four-foot-high “horse and cattle box wire” with six-foot steel posts spaced every ten feet. Hester erected this fence when he purchased the property. Since the fence was erected, Hester has kept horses in the enclosure. After the accident, Hester determined that his three horses had escaped over a trampled-down portion of the field fence. Hester stated that the horses had never broken out of their enclosure during the two-year period from March 2006 until this incident.
¶ 6. Routinely, Hester visually inspected the fence daily when he fed the horses grain at approximately 6:00 p.m. On the evening of the subject accident, Hester fed the horses and observed no problems with the fence. Diana and Lawrence also owned horses. Diana admitted she did not know exactly how Hester’s horses got out of the enclosure, and she did not observe any problems with the fence. Hester stated in his deposition that his neighbor had let the horses graze in his pasture across the road at least one week out of every month in the prior summer before the incident. Lawrence speculated that Hester had fed his horses inadequately and that they had escaped to feed on Bahia grass in the neighbor’s pasture, where two of the horses were found after the accident.
¶ 7. Once discovery was completed, Hester filed a motion for summary judgment, claiming that the Ladniers had not produced any evidence that he was negligent in securing his horses. The trial court agreed and granted summary judgment. Ladnier v. Hester, 98 So.3d 1074, 1075-76, ¶¶ 2-5 (Miss.Ct.App.2011), reh’g denied (Jan. 17, 2012).
¶ 8. The Court of Appeals affirmed the trial court’s grant of summary judgment. The Ladniers petitioned this Court for a writ of certiorari, arguing that the Court of Appeals had wrongly decided the case. We granted the petition for writ of certio-rari. Ladnier v. Hester, 82 So.3d 620 (Table) (Miss.2012). We reverse the Court of Appeals’ judgment affirming the trial court’s grant of summary judgment in favor of Hester and remand this case to the trial court for further proceedings consistent with this opinion.
DISCUSSION
¶ 9. The standard of review for the grant or denial of a motion for sum *1028 mary judgment is de novo. State ex rel. Hood v. Louisville Tire Ctr., Inc., 55 So.3d 1068, 1072 (Miss.2011) (citation omitted). The trial court must review the evidence in the light most favorable to the nonmoving party. Id. If there is any doubt regarding the existence of a genuine issue of material fact, the benefit goes to the nonmovant. Miller v. R.B. Wall Oil Co., 970 So.2d 127, 130 (Miss.2007). Trial judges must be sensitive to the notion that summary judgment may never be granted in derogation of a party’s constitutional right to trial by jury. Miss. Const, art. 3, § 31 (1890). However, “there is no violation of the right of trial by jury when judgment is entered summarily in cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.” Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983).
 ¶ 10. The moving party has the burden of demonstrating that no genuine issue of material fact exists, while the non-moving party should be given the benefit of every reasonable doubt. Moss v. Batesville Casket Co., Inc., 935 So.2d 393, 398 (Miss.2006) (citation omitted).
Federal cases suggest that the burden is on the moving party to establish that there is no genuine issue of fact, although this burden is one of persuasion, not of proof. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt.
Brown, 444 So.2d at 362 (citations omitted). A fact is material if it “tends to resolve any of the issues properly raised by the parties.” Moss, 935 So.2d at 398 (citing Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss. 1995)). Defining issues of fact, this Court has held that
Issues of fact, as a matter of proper construction of Rule 56 ... exist where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.
Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984) disagreed with on other grounds Thornhill v. Sys. Fuels, Inc., 523 So.2d 983 (Miss.1988).
¶ 11. Regarding stray livestock, this Court has held that, to support a claim of negligence, the plaintiff must submit proof showing that the defendant “(1) failed to exercise reasonable care to keep the [animal] from being at large, and (2) that such failure, if any, resulted in the escape of the [animal] from its enclosure, and (3) that the [animal] owner’s failure to exercise such reasonable care proximately caused injury to the motorist who collided with the [animal].” Barrett v. Parker, 757 So.2d 182, 188 (Miss.2000). This Court previously has stated:
Apart from statute or ordinance the owner of a domestic animal is not under an absolute duty to keep it from being loose and unattended on the highway and its being there is not in itself, or necessarily, unlawful or a wrong to the person injured or to the person whose property is damaged so as to render its owner liable for the injurious consequences that may accidentally follow therefrom.
Pennyan v. Alexander, 229 Miss. 704, 713-14, 91 So.2d 728, 732 (1957) (quoting Am. Jur.2d Animals § 738). The mere fact that livestock escapes from an enclosure *1029 and an accident occurs is not evidence of negligence on the part of the owner; the plaintiff must prove actual negligence. Barrett, 757 So.2d at 187-88.
¶ 12. Although the Court of Appeals’ majority acknowledged Lawrence Ladnier’s claim that the horses were malnourished and hungry and were enticed by the pasture across the road where they had grazed previously, it found that claim to be rebutted, since Hester claimed that he fed his horses daily at 6:00 pm and visually inspected the fence at that time. Ladnier, 98 So.3d at 1077, ¶ 10. Furthermore, the majority found that the Ladniers did not produce any evidence that would rebut Hester’s proof that the fence was adequate for containing horses under the circumstances. Id. at 1078, ¶ 12.
¶ 18. The majority of the Court of Appeals noted that Hester had described the portion of the fence from which the horses had escaped as being constructed of “horse and cattle box wire,” and further noted that, in the two years prior to the incident in which the horses had been enclosed there, they had never escaped. Ladnier, 98 So.Sd at 1077, ¶ 10. Lawrence Ladnier stated in his deposition that, in his experience as a horse owner, the fence was inadequate. Both Hester and Ladnier are horse owners, but neither had been established as an expert; nor has Hester presented any other evidence of the adequacy of the fence beyond his own bare assertions. In addition, while Hester claimed that he daily fed the horses at 6:00 p.m., he did not state how much he fed the horses, or how much food a thousand-pound horse required. The daily “visual inspections” of the fence that the Court of Appeals majority mentioned were characterized by Hester in his deposition as “a glance” at the fence.
¶ 14. Thus, whether the enclosure was adequate as averred by Hester, or inadequate as averred by the Ladniers, is a jury question. The undisputed fact that, for two years, the three horses had been penned with field fence and had not escaped, is not proof that Hester was, or was not, negligent. With regard to the instant motion for summary judgment, we view the evidence in the light most favorable to the nonmovants, the Ladniers. Hood, 55 So.3d at 1072. As noted above, “[w]hen doubt exists whether there is a fact issue, the non-moving party gets its benefit.” Brown, 444 So.2d at 362. Issues of fact exist where there is more than one reasonable interpretation that may be given undisputed testimony, and where materially differing but nevertheless reasonable inferences may be drawn from the uncon-tradicted facts. Dennis, 457 So.2d at 944. Viewing the evidence in this light, the Lad-niers have offered sufficient evidence to withstand Hester’s motion for summary judgment.
¶ 15. Hester maintains that his fenced enclosure was adequate; the Ladniers maintain that the “field fence” constructed of “horse and cattle box wire” was not adequate to maintain horses. Although the question of the material used in Hester’s fence is undisputed, the parties draw different reasonable inferences as to whether such a fence was sufficient to restrain a horse. The record contains very little evidence as to the adequacy of this type of fence, beyond the depositions of Hester and the two Ladniers. All that has been produced is conflicting evidence of roughly equal weight on the adequacy, vel non, of the fence enclosure. As noted above, if there is any doubt regarding the existence of a genuine issue of material fact, the benefit goes to the nonmovant. Miller, 970 So.2d at 130.
¶ 16. • Hester chose to file a motion for summary judgment. In so doing, he incurred the burden of showing that no genuine issue of material fact exists. As we *1030 have found conflicting evidence of roughly equal weight on the adequacy of the fence, there is doubt as to the existence of a genuine issue of material fact. The Ladni-ers receive the benefit of this doubt, thus meaning that the trial judge erred in granting summary judgment in favor of Hester.
¶ 17. However, we state here clearly that in no way does this Court prejudge the final outcome of this case. On remand, the Ladniers will have the burden at trial to prove negligence. The law in Mississippi is that “it would not be impossible for a cow to escape and get onto a nearby road even though its owner was not negligent in any manner in his confinement of the cow. Therefore, allowing the jury to infer negligence ... simply because [the defendant’s animal] was loose on the road would not be appropriate.” Barrett, 757 So.2d at 187-88. On remand, the Ladniers will be able to prove negligence only if they can prove that Hester failed to exercise reasonable care to keep the horses from being at large; that such failure, if any, resulted in the escape of the horses from their enclosure; and that Hester’s failure to exercise such reasonable care proximately caused injury to Diana Ladnier, thus causing Diana and Lawrence Ladnier to suffer damages.
CONCLUSION
¶ 18. Based on today’s discussion, we find that the circuit court erred in granting Hester’s motion for summary judgment and that the Court of Appeals erred in affirming the judgment of the trial court. Thus, we reverse the judgments of both the Court of Appeals and the trial court, and remand this case to the Circuit Court of George County for a trial on the merits.
¶ 19. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS AND KING, JJ., CONCUR. PIERCE, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.