# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01482-COA

**RICHARD C. WATKINS**                                                                      **APPELLANT**

**v.**

**JOHN OAKES**                                                                                          **APPELLEE**

DATE OF JUDGMENT:                     09/09/2019
TRIAL JUDGE:                                  HON. W. ASHLEY HINES
COURT FROM WHICH APPEALED:   WASHINGTON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        JIM WAIDE
                                                         JOHN H. DANIELS III
ATTORNEYS FOR APPELLEE:           SILAS W. McCHAREN
                                                         ABBEY ADCOCK REEVES
NATURE OF THE CASE:                    CIVIL - TORTS - OTHER THAN PERSONAL
                                                         INJURY AND PROPERTY DAMAGE
DISPOSITION:                                 AFFIRMED - 10/06/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     Richard Watkins filed a complaint alleging constructive discharge by his employer, Farmers Grain Terminal Inc. (Farmers Grain), and intentional interference with his employment by Farmers Grain's "vice president of rice," John Oakes.  The Washington County Circuit Court dismissed Watkins's claim against Farmers Grain[1] and also granted summary judgment in favor of Oakes.

¶2.     Watkins now appeals from the trial court's order granting summary judgment, arguing

---

[1] Watkins is not appealing from the trial court's order dismissing Farmers Grain.

that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether Oakes is liable to Watkins for intentional interference with Watkins's at-will employment. Watkins also asserts that by granting summary judgment, the trial court violated Watkins's constitutional right to a jury trial.

¶3.     After our review, we find that Watkins failed to meet his burden of proving each element of intentional interference with his contract by a preponderance of the evidence. Watkins therefore failed to show that a genuine issue of material fact existed. As a result, we affirm the trial court's order granting Oakes's motion for summary judgment.

**FACTS**

¶4.     Farmers Grain employed Watkins as the Chief Financial Officer (CFO). On July 26, 2016, Watkins resigned from his position at Farmers Grain, claiming that he endured multiple instances of mistreatment and harassment at the hands of Oakes, the vice president of rice at Farmers Grain. Watkins asserted that this mistreatment and harassment by Oakes created a hostile work environment. The record reflects that Watkins reported his complaints about Oakes's conduct to Farmers Grain's Chief Executive Officer (CEO), Steve Nail. According to Watkins, Nail failed to take adequate remedial action. Watkins claimed that as a result of Farmers Grain's failure to provide him with a safe work place, he had no other choice but to resign.

¶5.     On January 9, 2017, Watkins filed a complaint against Farmers Grain and Oakes.[2] In

---

[2] Watkins filed his first amended complaint on April 18, 2018.

his complaint, Watkins asserted a claim of intentional interference with employment against Oakes, claiming that Oakes is individually liable to him because Oakes intentionally interfered with his employment. Watkins specifically alleged that Oakes "engaged in bizarre threatening behavior toward [Watkins], causing [Watkins] to fear for his safety." Watkins also asserted a claim of constructive discharge against Farmers Grain, stating that although he reported Oakes's threats to the CEO of Farmers Grain, Nail "failed to take any action to protect [Watkins]." Watkins claimed that he therefore "had no alternative but to leave his employment" because of fear of violence from Oakes.

¶6.     Farmers Grain filed a Mississippi Rule of Civil Procedure 12(b)(6) motion seeking to dismiss Watkins's complaint for failing to state a claim for which relief can be granted. The trial court granted Farmers Grain's motion. As stated, Watkins is not appealing from the trial court's order dismissing Farmers Grain.

¶7.     On April 23, 2019, Oakes filed a motion for summary judgment, arguing that Watkins could not make a prima facie case for intentional interference with his employment because Watkins could not show that his employment contract with Farmers Grain would have been performed but for Oakes's alleged interference. Oakes asserted Watkins's employment was not terminated by Farmers Grain; rather, Watkins voluntarily resigned from his position. Oakes also argued that as an individual co-employee, he could not be liable to Watkins under the legal theory of "hostile work environment" because that theory imposes liability on employers, not employees.

3

¶8.     On September 9, 2019, the trial court entered an order granting Oakes's motion for summary judgment. The trial court explained that it found no evidence that Oakes's behavior prevented Farmers Grain from performing its duties under the contract. The trial court stated that the evidence showed that Farmers Grain "was not only willing to allow Watkins to retain his employment, but wanted him to stay." The trial court accordingly held that because Watkins "voluntarily left his employment, Oakes cannot be held liable for interfering with his at-will employment contract" with Farmers Grain. The trial court further stated that "the hostile work environment was not hostile within the meaning of employment law."

¶9.     Watkins filed his notice of appeal from the trial court's order granting summary judgment.

## STANDARD OF REVIEW

¶10.    We review a trial court's grant of summary judgment de novo. *Ladnier v. Hester*, 98 So. 3d 1025, 1027-28 (¶9) (Miss. 2012). We recognize that when presented with a motion for summary judgment, "[t]he trial court must review the evidence in the light most favorable to the nonmoving party." *Id*. at 1028 (¶9). "If there is any doubt regarding the existence of a genuine issue of material fact, the benefit goes to the nonmovant." *Id*.

## DISCUSSION

### I.      Summary Judgment

¶11.    Watkins argues that because genuine issues of material fact exist as to whether Oakes is liable for intentional interference with Watkins's at-will employment, the trial court erred

by granting summary judgment in favor of Oakes. Watkins claims that Oakes's threats and his instructions to other Farmers Grain employees prevented Watkins from performing the functions of his job and amounted to a constructive discharge. Watkins also argues that "it was for the jury, not the court, to decide whether Watkins['s] leaving his employment was voluntary or whether it was reasonable based on Oakes's possibly taking violent action against Watkins." Watkins maintains that a jury could find that Watkins could not properly perform his duties because he could not stay after hours if Oakes was present.

¶12. Oakes asserts, however, that in order to succeed on his claim, Watkins must show (among other things) that Oakes acted in such a way to cause Farmers Grain to stop performing under its contract with Watkins. Oakes argues that Watkins cannot show that Oakes induced or caused Farmers Grain to not perform its contract with Watkins, and therefore Watkins cannot show the existence of a genuine issue of material fact as to whether Oakes intentionally interfered with Watkins's employment contract. Oakes also argues that no genuine issue of material fact exists "as to whether Watkins was constructively discharged because (1) a reasonable person in his circumstances would not have felt compelled to resign; and (2) Oakes was not Watkins['s] employer and did not have the power or authority to actually or constructively discharge Watkins." Oakes submits that the trial court therefore correctly granted summary judgment after finding that Oakes could not be liable for intentional interference with Watkins's at-will employment.

¶13. The Mississippi Supreme Court has held that tortious interference with at-will

5

contracts of employment is a viable claim. *Levens v. Campbell*, 733 So. 2d 753, 760 (¶27) (Miss. 1999). The supreme court explained that "[a]n action for tortious interference with [a] contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party." *Id*.; *see also Jones v. Mullen*, 100 So. 3d 490, 497 (¶32) (Miss. Ct. App. 2012) ("Mississippi law recognizes a claim for interference 'with the performance of a contract between another and a third party' by one 'who intentionally and improperly interferes,' and this interference causes 'the third party not to perform.'" (quoting *Morrison v. Miss. Enter. for Tech. Inc*., 798 So. 2d 567, 574 (¶23) (Miss. Ct. App. 2001)). To succeed on a claim of tortious interference with a contract, a plaintiff must prove the following elements:

> (1) intentional and willful acts, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) resulting in actual damage or loss.

*Grice v. FedEx Ground Package Sys. Inc.*, 925 So. 2d 907, 910 (¶6) (Miss. Ct. App. 2006); *Levens*, 733 So. 2d at 760-61 (¶27) (citing *Collins v. Collins*, 625 So. 2d 786, 790 (Miss. 1993)); *see also Scruggs, Millette, Bozeman & Dent P.A. v. Merkel & Cocke P.A.*, 910 So. 2d 1093, 1099 (¶26) (Miss. 2005) (acknowledging the requirement of an "additional element" of "showing that the defendant's acts were the proximate cause of the loss or damages suffered by the plaintiff"). We recognize that "[t]hese various elements need be proven only by a preponderance of the evidence." *Collins*, 625 So. 2d at 791.

¶14. Relevant to the case before us, we also note that the party alleging intentional

interference with contract must prove "that the contract would have been performed but for the alleged interference." *Levens*, 733 So. 2d at 761 (¶27) (citing *Par Indus. Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (¶8) (Miss. 1998)). "A party to a contract cannot be charged with interfering with his own contract"; rather, "it is accepted that the wrongdoer is a 'stranger' to the contract which was interfered with—an outsider." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 745 (¶89) (Miss. 2019) (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1269 (Miss. 1992)). In the present case, Watkins must show that Oakes acted in such a way to cause Farmers Grain to stop performing under its employment contract with Watkins.

¶15.    As stated, the trial court found that Watkins failed to meet his burden of showing that his at-will employment contract with Farmers Grain "would have been performed but for the alleged interference" by Oakes. *See Levens*, 733 So. 2d at 761 (¶27); *Grice*, 925 So. 2d at 910 (¶6). The trial court accordingly granted Oakes's motion for summary judgment. In its order, the trial court acknowledged that "Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury." (Quoting *Morrison*, 798 So. 2d at 567 (¶23)). The trial court further recognized that to prove intentional interference with a contract, Watkins had to show that Oakes's acts were intentional and willful; that Oakes's acts were calculated to cause damages to Watkins in his lawful business; that Oakes's acts were done with the unlawful purpose of

7

causing damage and loss, without right or justifiable cause on the part of Oakes; and that actual loss occurred. The trial court ultimately determined that Watkins failed to present evidence showing "that Oakes'[s] behavior prevented [Farmers Grain] from performing its duties under the contract."

¶16. Upon our review of the trial court's order, we recognize that Oakes, as the party moving for summary judgment, "bears the burden of demonstrating that no genuine issue of material fact exists." *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010). A fact is material if it "tends to resolve any of the issues properly raised by the parties." *Ladnier*, 98 So. 3d at 1028 (¶10). "As to the issues on which [Watkins] bears the burden of proof at trial, [Oakes] needs only to demonstrate an absence of evidence in the record to support an essential element of [Watkins's] claim." *Cothern v. Vickers Inc.*, 759 So. 2d 1241, 1245 (¶6) (Miss. 2000).

¶17. In order to defeat Oakes's motion for summary judgment, "[Watkins,] the nonmoving party[,] must make a showing sufficient to establish the existence of the elements essential to his case. In other words, [Watkins] must present affirmative evidence that a genuine issue of material fact exists." *Id*. The trial court should give Watkins "the benefit of every reasonable doubt." *Id*.

¶18. Watkins argues that he met his burden of proving that issues of material fact exist as to essential elements of his case; namely, "[w]hether Watkins'[s] leaving was 'voluntary' or was a 'constructive discharge.'" Watkins admits that he did not lose his job because of "any

8

affirmative act by the employer," but he asserts that Oakes, his "co-employee[,] . . . made it unsafe for Watkins to come to work, and instructed subordinate employees not to allow Watkins to perform some of his job duties." Watkins therefore maintains that the question of whether he left or was constructively discharged was a question for the jury to decide.

¶19. The Mississippi Supreme Court has provided the following definition of "constructive discharge":

> A constructive discharge may be deemed to have resulted when the employer made conditions so intolerable that the employee reasonably felt compelled to resign. Would a reasonable person in the employee's shoes have felt compelled to resign? We do not delve into the employer's state of mind or purpose; but rather the focus is on whether or not the employer made conditions intolerable. Additionally, the Fifth Circuit seeks to determine whether or not the employee could reasonably conclude that he had no meaningful choice but to resign.

*Id.* at 1246 (¶7) (citations and internal quotation marks omitted) (quoting *Bulloch v. City of Pascagoula*, 574 So. 2d 637, 640 (Miss. 1990)).

¶20. In applying this law to the facts before us, we find that Watkins's claim for constructive discharge against Oakes fails because the record is clear that Oakes is Watkins's *co-employee*, not Watkins's *employer*. Steve Nails, the CEO of Farmers Grain, testified in his deposition that neither Watkins nor Oakes had the ability to terminate the employment of the other. Furthermore, the record reflects that the trial court dismissed Watkins's claim of constructive discharge against Farmers Grain. Watkins even admits in his appellate brief that he did not lose his job because of "any affirmative act by the employer," Farmers Grain.

¶21. We next turn to review the trial court's finding that Watkins failed to prove "that the

9

contract [with Farmers Grain] would have been performed but for the alleged interference" by Oakes. *Levens*, 733 So. 2d at 761 (¶27). In ruling on Oakes's motion for summary judgment, the trial court examined the following documents: Watkins's complaint; the depositions of Oakes, Watkins, and Nail; Watkins's letter of resignation; Watkins's emails to Nail regarding his issues and confrontations with Oakes; and the depositions from other Farmers Grain employees: Thomas Wright, Tara Carson, Jeff Whitt, Matt King, and Stacy Walker. "The evidence contained in those documents must . . . be taken in the light most favorable to [Watkins]." *Wertz v. Ingalls Shipbuilding Inc.*, 790 So. 2d 841, 846 (¶16) (Miss. Ct. App. 2000) (citing *Daniels v. GNB Inc.*, 629 So. 2d 595, 599 (Miss. 1993)).

¶22. Our review of the depositions of the Farmers Grain employees reflects that only one of the employees, Jeff Whitt, stated that he heard Oakes call Watkins a disparaging name behind Watkins's back. Whitt also admitted that Oakes told Whitt "once or twice" that he wanted to "kick [Watkins's] ass." However, the depositions reflect that none of the employees actually witnessed any violence between Oakes and Watkins or overheard any threats of violence Watkins made to Oakes.

¶23. As to Watkins's claim that Oakes prevented Watkins from performing the functions of his job as CFO, Oakes admitted in his deposition that he instructed some employees not to allow Watkins to sign any more "rice checks." Oakes explained that he was vice president of rice, and he discovered mistakes Watkins had made on two of the checks written to pay farmers for rice. Oakes testified that due to the mistakes and due to "all [of] this drama

[Watkins] keeps bringing inside the office with me," he thought it would be easier to let someone other than Watkins sign the rice checks. Oakes explained that "Farmers Grain has a policy of two people signing checks. It does not have to be any certain two people."

¶24. The record reflects that Watkins's job requirements as CFO involved more duties than signing checks for rice. Watkins testified in his deposition that his duties also involved accounting and information technology work.

¶25. Nail also testified in his deposition that Oakes never asked him to terminate Watkins's employment, nor did Oakes express any desire for Nail to terminate Watkins's employment. Nail also explained that neither Watkins nor Oakes had the ability to terminate the other. When asked to characterize the dispute between Watkins and Oakes, Nail answered, "Well, my opinion was that they were both grown men, they could get over it and work together and without that interfering unduly with carrying out their job responsibilities. Whether they got along outside of Farmers Grain's business was not my jurisdiction."

¶26. The record reflects that prior to Watkins's official resignation, and in response to Watkins's complaints regarding Oakes, Nail offered to give Watkins a month off of work, which Watkins accepted. Watkins stated that Nail asked him if he would accept the offer to take a month off of work "as opposed to quitting," in order to diffuse the situation between Watkins and Oakes. Watkins stated that Nail told him that "[w]e do not want to lose you."

¶27. In his resignation letter to Nail, Watkins wrote:

> As you know, over the couple of years, the ongoing tension from John Oakes has continued. I have done my best to avoid his hostility as much as possible

11

to avoid any type of incident. It appears that hostility has affected other employees. It is clear to me that the conflict will not be resolved. Therefore, I feel that resigning is the best option for me and the other office employees[.]

Nail testified that in response to Watkins's resignation letter, he "implore[d]" Watkins not to quit, but Watkins left anyway. When asked whether Watkins was being forced out of his employment with Farmers Grain, Nail responded, "Never."

¶28. After reviewing the record, we find that the trial court did not err in determining that Watkins failed to meet his burden of proving "that Oakes'[s] behavior prevented [Farmers Grain] from performing its duties under the contract" and that because "Watkins voluntarily left his employment, Oakes cannot be held liable for interfering with his at-will employment contract with [Farmers Grain]." We therefore affirm the trial court's order granting summary judgment in favor of Oakes.[3]

## II. Right to a Jury Trial

¶29. Watkins next argues that the trial court's actions of deciding factual issues on summary judgment violated Watkins's constitutional right to a trial by jury. Oakes asserts, however, that Watkins only has a right to a jury trial when there is a genuine dispute of material fact that must be resolved by a fact finder.

¶30. We recognize that "[b]oth the United States Constitution and Mississippi Constitution establish the right to trial by jury." *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 389, 399

---

[3] *Cf. Frensley v. N. Miss. Med. Ctr. Inc.*, No. 1:09-CV-118-SA-JAD, 2010 WL 3087407, at *4-5 (N.D. Miss. Aug. 5, 2010).

12

(¶43) (Miss. 2018) (citing U.S. Const. amend. VII; Miss. Const. art. 3, § 31). However, our supreme court has clarified that "'no constitutional right to a jury trial exists' where a party fails to show that 'some dispute of material fact exists which a trial could resolve.'" *Id*. at (¶44) (quoting *Oglesby v. Terminal Transp. Co. Inc*., 543 F.2d 1111, 1113 (5th Cir. 1976); *Towner v. Moore*, 604 So. 2d 1093, 1098 (Miss. 1992)); *see also Ladnier*, 98 So. 3d at 1028 (¶9) ("[T]here is no violation of the right of trial by jury when judgment is entered summarily in cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." (quoting *Brown v. Credit Ctr. Inc*., 444 So. 2d 358, 362 (Miss. 1983)).

¶31. Because we find that Watkins failed to show that a genuine issue of material fact exists as to his claim against Oakes, and because Oakes is therefore entitled to judgment as a matter of law, we find that the trial court did not violate Watkins's right to a jury trial. *See Elliot*, 249 So. 3d at 399 (¶45).

¶32. **AFFIRMED.**

**BARNES, C.J., GREENLEE, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**