# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01565-COA

**OSHAUN JOHNSON**                                                                 **APPELLANT**

**v.**

**T & T FARMS, INC. F/K/A HICKORY HOLLOW**                          **APPELLEE**
**FARMS INC.**

DATE OF JUDGMENT:               10/20/2017
TRIAL JUDGE:                    HON. EDDIE H. BOWEN
COURT FROM WHICH APPEALED:      SIMPSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         JOHN D. SMALLWOOD
ATTORNEY FOR APPELLEE:          RAYMOND PATRICK TULLOS
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                    AFFIRMED - 04/09/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON AND J. WILSON, P.JJ., AND TINDELL, J.

### CARLTON, P.J., FOR THE COURT:

¶1.     Oshaun Johnson appeals the Simpson County Circuit Court's order granting summary judgment in favor of T&T Farms Inc.[1] On appeal, Johnson asserts that the circuit court erred by finding that Johnson failed to establish prima facie cases of both negligence and liability, and that the circuit court erred in deciding material issues of fact reserved for a jury.[2]

¶2.     After our review, we find no error. We therefore affirm the circuit court's order

---

[1] The record shows that T&T Farms was formerly known and did business as "Hickory Hollow Farms, Inc." Various documents in the record refers to the entity by both names. For the purposes of clarity in this opinion, we will refer to the entity as T&T Farms.

[2] As we will explain later in this opinion, Robert Reiser & Company Inc., was a party defendant but was dismissed from the case by agreement of the parties below.

granting summary judgment in favor of T&T Farms.

## FACTS

¶3.     In October 2013, Johnson was employed as a night shift clean-up crew member at Polk's Meat Products Inc.  Johnson alleged that on October 10, 2013, while cleaning a machine at Polk's, his left hand and arm became caught in the exposed chain drive of the meat grinder.  Johnson stated that his hand remained stuck in the meat grinder until he was eventually discovered by co-workers.  As a result of his injuries, Johnson suffered multiple hand fractures, which required surgery and skin grafts.

¶4.     In December 2014, Johnson filed a complaint against T&T Farms, Robert Reiser & Company Inc. (Reiser), John Does 1-5, and John Doe Entities 1-5 asserting claims of negligence, breach of warranty, and strict liability.  In his complaint, Johnson alleged that Polk's purchased a used meat grinder from T&T Farms, which was distributed by Reiser. (Reiser was later dismissed from the case by agreement of the parties.)  Johnson claimed that T&T Farms made modifications to the meat grinder, including removing safety devices associated with the chain drive, and that T&T Farms then sold the meat grinder to Polk's in an altered, dangerous, and defective condition.  Johnson asserted that as a result of the defective meat grinder, he sustained severe injuries to his left hand and arm, lost wages, and loss of earning potential.  Johnson sought compensatory and punitive damages in the amount of five million dollars.

¶5.     On June 12, 2017, T&T Farms filed a motion for summary judgment asserting that no genuine issue of material fact existed and that Johnson failed to demonstrate the essential

elements of the claims set forth in his complaint. T&T Farms explained that Polk's came into possession of the meat grinder at issue when Polk's purchased T&T Farms in its entirety. Along with the meat grinder, Polk's acquired all assets and liabilities associated with T&T Farms. T&T Farms asserted that T&T Farms ceased to exist almost fifteen years prior to Johnson's injuries and that Johnson failed to demonstrate any duty that T&T Farms owed him. T&T Farms argued that, although it entered into a contract with Polk's for a business acquisition, Johnson failed to demonstrate that his relationship with Polk's—fifteen years following the execution of the contract—was one contemplated by the original parties for purposes of liability and duty. T&T Farms further asserted that pursuant to the standard provided by the Mississippi Products Liability Act for failure-to-warn cases, Johnson's claims failed because Johnson did not demonstrate that the ordinary user or consumer would have required a warning or instruction from T&T Farms. *See* Miss. Code Ann. §11-1-63(a) (Rev. 2014).

¶6. T&T Farms also argued that prior to Polk's acquisition of the meat grinder, T&T Farms asserted that it performed regular maintenance and cleaning of the machine, but at no time did it change, alter, or modify the meat grinder. T&T Farms claimed that Johnson failed to disclose any evidence showing that T&T Farms modified or altered the meat grinder while it was under the control of T&T Farms or that T&T Farms engaged in any negligent behavior that caused Johnson's injuries.

¶7. On August 11, 2017, Reiser also filed a motion for summary judgment, claiming that Johnson failed to offer any proof that Reiser breached any duty owed to him. Reiser stated

that it purchased the meat grinder at issue in 1975 and then sold the meat grinder to Morton Frozen Foods in 1976. Reiser maintained that it neither designed nor manufactured the meat grinder at issue, nor did it make any modifications or alterations to the meat grinder. Reiser asserted that since 1980 it has not received any information relating to the location, use, or condition of the meat grinder. Reiser also argued that Johnson was barred from prevailing on his claim for breach of warranty by the applicable statute of limitation,[3] and Johnson was precluded from recovery against Reiser as an innocent seller.

¶8. On October 9, 2017, the circuit court held a hearing on both of the summary judgment motions. At the hearing, Johnson's counsel explained how Johnson received his injuries: while Johnson was at work cleaning a machine, one of Johnson's co-workers opened the cover to the chain drive on the meat grinder without Johnson's knowledge. Johnson turned, and his arm went into the chain drive of the meat grinder. Johnson's counsel claimed that Terry Windham, the owner of T&T Farms who sold the business to Polk's in 1998, made it "relatively clear" in his deposition testimony that machines like the meat grinder at issue are usually manufactured with an electronic interlock feature which shuts the machine off when someone opens part of the machine that exposes moving parts. Johnson's counsel argued that although Windham was aware of interlock features on other machines, he failed to inform Polk's that the meat grinder at issue did not have an interlock feature. Johnson's counsel clarified that Windham did not "necessarily [possess] a duty to warn, but a duty to . . . [update] the machine" and install an interlock feature on the meat grinder.

---

[3] Miss. Code Ann. § 75-2-725 (Rev. 2016) ("An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.").

¶9. After hearing arguments, the circuit court stated: "I don't see the defect here. I don't see the failure to warn as an issue. The machine was used for so many years after [acquisition from T&T Farms]. Polk's had constructive or actual knowledge that if you left that door open something was going to happen." The circuit court ultimately determined that "after looking at all these documents[,] . . . I don't see where there's any genuine issue of material fact for a jury to determine. I'm going to grant summary for T&T Farms[.]" The circuit court also recognized that Johnson and Reiser reached an agreement dismissing Reiser from the lawsuit.

¶10. On October 20, 2017, the circuit court entered its order granting summary judgment in favor of T&T Farms. That same day, the circuit court also entered an order granting summary judgment in favor of Reiser.

¶11. On October 31, 2017, Johnson filed his notice of appeal from the circuit court order granting summary judgment in favor of T&T Farms.

**STANDARD OF REVIEW**

¶12. This Court reviews a circuit court's "grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Holifield v. City Salvage Inc.*, 230 So. 3d 736, 738 (¶5) (Miss. Ct. App. 2017) (quoting *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)). We recognize that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

5

is entitled to a judgment as a matter of law." *Id*. (quoting M.R.C.P. 56(c)). "Numerous, immaterial facts may be controverted, but only those that affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. (quoting *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch*., 759 So. 2d 1203, 1208 (¶12) (Miss. 2000)). If one party swears to one version of events and the opposing party swears that the opposite is the truth, there are issues of fact sufficient to deny a motion for summary judgment. *Harris v. Int'l Truck And Engine Corp*., 912 So. 2d 1101, 1104 (¶5) (Miss. Ct. App. 2005). In addition, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Froemel v. Estate of Froemel*, 248 So. 3d 876, 878-79 (¶8) (Miss. Ct. App. 2018) (quoting M.R.C.P. 56(e)).

## DISCUSSION

¶13. On appeal, Johnson argues that the circuit court erred in granting summary judgment despite the existence of the following material issues of fact: whether the meat grinder's failure to contain an interlock feature qualifies as a defect and whether T&T Farms possessed actual or constructive knowledge of the defect. Johnson asserts that he presented sufficient evidence to meet his burden of proof in establishing (1) a prima facie case of negligence under the common law and (2) a prima facie case of strict liability under the Mississippi Products Liability Act (MPLA), codified in Mississippi Code Annotated section 11-1-63. As a result, Johnson maintains that the circuit court erred in granting summary judgment in

6

favor of T&T Farms.

¶14.    In support of his argument, Johnson claims that he met his burden of proving that the meat grinder was defective at the time T&T Farms sold the machine to Polk's because it lacked an interlock mechanism to shut off the machine when moving parts have been opened or exposed.  Johnson submits that as the seller of the product, T&T Farms possessed a duty to warn Polk's that the meat grinder did not have an electronic interlock feature, and was therefore defective, and T&T Farms breached this duty.  Johnson argues that the deposition testimony of Terry Windham, the former owner of T&T Farms, made it clear that T&T Farms sold the meat grinder to Polk's with actual knowledge of the machine's defect. Johnson further argues that because a reasonable factfinder could find that Windham had knowledge of the machine's defect, the circuit court erred in holding that he did not have such knowledge and instead should have submitted the issue to a jury to determine the credibility, weight, and contents of Windham's testimony.  However, the record shows that Johnson failed to provide any evidence to show that the meat grinder violated any industry standard or regulatory requirement or that it failed to meet the manufacturer's specifications. Johnson also failed to present any evidence to show that anyone tampered with the meat grinder.

¶15.    The Mississippi Supreme Court has set forth that "the MPLA provides the exclusive remedy for products-liability claims." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (¶15) (Miss. 2015) (internal quotation mark omitted).  The supreme court has also clarified that "[a] negligence claim alleging failure to warn . . . is a claim based upon products liability,

7

and such a claim must be analyzed under the MPLA." *Elliott*, 181 So. 3d at 269 (¶19).[4] We

therefore turn to the MPLA to address Johnson's products liability claims. *See Clark v.*

*Brass Eagle Inc.*, 866 So. 2d 456, 460-61 (¶18) (Miss. 2004) (recognizing that section 11-1-

63 "[i]s the starting point for a products liability claim . . .").

¶16.    The supreme court has held that in order to make out a prima facie case of liability in

a failure-to-warn case,

> a plaintiff must show by the preponderance of the evidence that the product
> was defective because it failed to contain adequate warnings or instructions,
> the defective condition rendered the product unreasonably dangerous to the
> user or consumer, and the defective and unreasonably dangerous condition of
> the product proximately caused the damages for which recovery is sought.

*Elliott*, 181 So. 3d at 273 (¶40); *see also Williams v. Bennett*, 921 So. 2d 1269, 1273 (¶13)

(Miss. 2006).  Section 11-1-63(a)(i)-(iii) specifically states as follows:

> (a) The manufacturer, designer or seller of the product shall not be liable if the
> claimant does not prove by the preponderance of the evidence that at the time
> the product left the control of the manufacturer, designer or seller:
>
> > (i) 1. The product was defective because it deviated in a material
> > way from the manufacturer's or designer's specifications or
> > from otherwise identical units manufactured to the same
> > manufacturing specifications, or
> >
> > 2. The product was defective because it failed to contain
> > adequate warnings or instructions, or
> >
> > 3. The product was designed in a defective manner, or

---

[4] If, in the case before us, Johnson had alleged negligence claims against T&T Farms that were unrelated to the meat grinder's alleged defects, such as "fraud, misrepresentation, or breach of the implied warranty of merchantability," then "common-law principles would have controlled." *Id.*; *see also Johnson & Johnson Inc. v. Fortenberry*, 234 So. 3d 381, 402 (¶¶69-70) (Miss. 2017).

4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

¶17.	The MPLA also provides a seller with the following defenses to liability:

(e) In any action alleging that a product is defective pursuant to paragraph (a)(i)[2] of this section, the manufacturer, designer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

(f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)[3] of this section, the manufacturer, designer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:

(i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

. . . .

(h) In any action alleging that a product is defective pursuant to paragraph (a)

9

of this section, the seller or designer of a product other than the manufacturer shall not be liable unless the seller or designer exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller or designer altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller or designer had actual or constructive knowledge of the defective condition of the product at the time he supplied the product. It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product.

Miss. Code Ann. § 11-1-63.

¶18.　The record reflects that during his deposition, Windham testified that he purchased the meat grinder at issue in 1992, and he sold his business, along with the meat grinder, to Polk's in 1998. Johnson's attorney asked Windham if the meat grinder[5] would still operate once the cover over the chain drive was removed. Windham answered "I think . . . but I don't know . . . because we never run [the machine] with [the cover] off." Windham also testified that while the meat grinder was in his possession at T&T Farms, he and his employees would take off the piece covering the chain drive for "maintenance purposes." When they would remove the cover, Windham explained that they would "turn the electrical breakers off and have someone watch those breakers or either have a lockout system where the machine couldn't be turned on." Windham testified that neither he nor anyone else at T&T Farms had altered the chain drive on the meat grinder in any way.

¶19.　During his deposition, Windham acknowledged his understanding that an interlock mechanism is a safety feature that shuts off a machine when a moving part is exposed.

---

[5] During the deposition, the attorneys and Windham referred to the machine as a "mixer grinder."

10

Windham stated that some machines do have electronic interlocks, but he explained that older machines were not built with electronic interlocks. Windham confirmed that he had "probably" heard of electronic interlocks before selling the meat grinder (and T&T Farms) to Polk's. Windham also confirmed that he was aware that the meat grinder at issue did not have an electronic interlock prior to the sale, but he stated that it did not occur to him that the machine should be equipped with an electronic interlock "because we always turned [the machine] off, and then went to the breaker box and turned the breaker off if we were going to expose something like the gears and the chain." Johnson's attorney also asked Windham if he took "any steps to look at any standards or regulations that provide guidance on the safe use" of machinery like the meat grinder. Windham replied that he did not, and he again explained that "we had our lockout system where we had to . . . make sure the power was shut off if you went to do any maintenance on it." The record reflects that Johnson failed to present any evidence showing that the meat grinder was required to have a safety interlock feature.

¶20. After hearing arguments from Johnson and T&T Farms and reviewing Windham's deposition testimony, the circuit court found that no defect existed and therefore no genuine issue of material fact existed for a jury to determine. The circuit court asked Johnson's attorney: "[H]ow can you have a jury question when [Windham] says . . . he didn't know" whether the meat grinder at issue contained an interlock feature? The circuit court then held as follows:

There's no actual proof of defect other than somebody left the door open.

11

. . . .

> I don't see the defect here.  I don't see the failure to warn as an issue.  The machine was used for so many years after [acquisition from T&T Farms].  Polk's had constructive or actual knowledge that if you left that door open something was going to happen.

¶21.    We review a circuit court's "grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Holifield*, 230 So. 3d at 738 (¶5).  Additionally, as stated, in order to succeed on a products-liability claim, the claimant must prove by a preponderance of the evidence that the product was defective. *See* Miss. Code Ann. § 11-1-63(a).  Here, the circuit court found that no issue of material fact existed as to whether the meat grinder was defective.  The supreme court has held that "[a] fact is material if it tends to resolve any of the issues properly raised by the parties." *Ladnier v. Hester*, 98 So. 3d 1025, 1028 (¶10) (Miss. 2012) (internal quotation mark omitted).  The supreme court further explained:

> Issues of fact, as a matter of proper construction of Rule 56 . . . exist where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.

*Id*. (quoting *Dennis v. Searle*, 457 So. 2d 941, 944 (Miss. 1984)).

¶22.    Johnson failed to provide any evidence in support of his claim that the meat grinder was defective. *See Elmore v. Dixie Pipeline Co.*, 245 So. 3d 500, 509 (¶44) (Miss. Ct. App. 2017) (where the plaintiff failed to provide expert testimony establishing the defendant's duty, breach of duty, or alleged negligence, this Court held that "[a]bsent such evidence,

12

there was no genuine issue of material fact to preclude summary judgment" and the plaintiff's "negligence claim fails"). In viewing the evidence in the light most favorable to Johnson, we find no error in the circuit court's grant of summary judgment in favor of T&T Farms.

¶23. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL AND LAWRENCE, JJ., CONCUR. McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. C. WILSON, J., NOT PARTICIPATING.**